## In re OTT.

(District Court, S. D. Iowa, E. D.    July 5, 1899.)

### No. 741.

1. BANKRUPTCY—PRIORITY OF CLAIMS—TAXES—IOWA "MULCT TAX."

The "mulct tax" imposed by Code Iowa 1897, § 2432, on all persons carrying on the business of selling intoxicating liquors, although it is expressly denominated an "annual tax," and is assessed, certified, and collected in substantially the same manner, by the same officers, and for the same governmental uses, as taxes in general, is nevertheless merely a charge or license exacted for the privilege of carrying on the business described (following Smith v. Skow, 66 N. W. 893, 97 Iowa, 640), and is therefore not a "tax," within the meaning of Bankruptcy Act, § 64, cl. a, requiring trustees in bankruptcy to pay "all taxes legally due and owing by the bankrupt" in advance of the payment of dividends to creditors.

2. SAME—FOLLOWING STATE DECISIONS.

In determining whether a charge or mulct imposed by a state statute upon liquor sellers is a "tax," within the meaning of that term as used in the bankruptcy act, a court of bankruptcy will follow the decisions of the highest court of the state construing the statute.

In Bankruptcy. On certificate of review from John M. Helmick, Esq., referee in bankruptcy.

Julius Lisher, for Scott county.

Wm. Theophilus, for Jacob Gadient.

Isaac Petersberger and A. P. Murphy, for opposing creditors.

WOOLSON, District Judge. Louisa Catharine Ott having been duly adjudicated a bankrupt, the county of Scott filed its verified

claim and proofs of debt for $181.50, and demanded the debt be entered as having first priority in payment. The consideration thereof is declared to be mulct tax for $150, and interest thereon at $31.50. The facts are not in dispute. The bankrupt was the proprietor of a saloon in said county, and three months' mulct tax against her therefor is unpaid, the amount thereof being $150, on which $31.50 interest has accrued. The saloon was situated on premises owned by Jacob Gadient, and, by the statute of Iowa (section 2432, Code 1897), this mulct tax became a lien against said premises, unless discharged by payment. No controversy exists as to the debt having been properly allowed as a claim against the bankrupt estate. The entire controversy relates to the refusal of the referee to order priority of payment thereon. It is conceded that, if the claim is for "taxes," within the meaning of that term as used in section 64, cl. a, of the bankruptcy statute, this priority is correctly claimed. This section provides:

"The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, state, county, district or municipality in advance of the payment of dividends to creditors," etc.

If this mulct tax is not within said term "taxes," as therein used, the claim will be treated as other claims, having no priority of payment, and as entitled to share in whatever dividend is declared in favor of general creditors. Whether said mulct taxes are thus included in said section 64, cl. a, must be determined under the statutes of the state of Iowa imposing the same, and any construction of these statutes given by the supreme court, which may be pertinent to the controversy herein. Chapter 6 of the Code of Iowa of 1897 is entitled "Of Intoxicating Liquors." Section 2382 thereof prohibits the selling or keeping for sale of any intoxicating liquor, "except as provided in this chapter." Section 2384 provides that whoever uses any building for the selling of such intoxicating liquor is guilty of a nuisance, and the penalty therefor is prescribed. Section 2385 provides for the issuing of permits to sell and dispense intoxicating liquors, "for pharmaceutical and medical purposes," by certain classes of persons, and on certain conditions, in said and other sections following explicitly set forth. Section 2432 contains the following:

"Every person, partnership or corporation, except persons holding permits, carrying on the business of selling or keeping for sale intoxicating liquors, or maintaining a place where intoxicating liquors are sold or kept with intent to sell, shall pay an annual tax, to be called a 'mulct tax,' of six hundred dollars, in quarterly installments as hereinafter provided, which tax shall be a lien upon the real property wherein or whereon the business is carried on, or where the place for selling or keeping for sale is maintained, from the time each installment of tax as hereinafter provided shall become due and payable."

Subsequent sections provide for the return by the assessor to the county auditor of a list of persons carrying on such business, for the method of payment of the tax installments as the same fall due quarterly, for the certifying by the auditor to the county treasurer of persons and property subject to mulct tax, and for the entry or extension by the treasurer of such certified facts upon the proper

tax lists in the treasurer's possession. Section 2439 contains the following:

"After the expiration of one month from the date when such tax becomes due and payable, if not paid, it shall be delinquent and collectible by the treasurer in the same method as that in which other delinquent taxes are collectible, and all the provisions as to the collections of other delinquent taxes shall apply."

Said and next following sections provide for collection of such delinquent mulct tax by sale (1) of personal property used in connection with or in maintaining the business, and (2) of real property wherein or whereon the business is carried on; and also provide that all the provisions of law as to tax sales for other delinquent taxes (i. e. the general provisions as to tax sales in Iowa) shall apply to tax sales for delinquent mulct tax. Section 2445 provides that the revenue provided for by this mulct tax shall be paid into the county treasury, one half to go into the general county fund, and the other half to be paid over to the municipality in which the business taxed is conducted. But, if the business is conducted in a township outside the limits of a municipality, then such other half is to be paid to the clerk of the township, and the clerk apportions and the same is expended on the highways within the township. Authority is given for the transfer to the county road fund, and expenditure upon the highways of the county, of that half of the mulct tax which is made a county fund. Section 2448 provides:

"In any city, including cities acting under special charters, of five thousand or more inhabitants, no proceeding shall be maintained against any person who has paid the last preceding quarterly assessment of mulct tax, nor against any premises as a nuisance on account of the selling or keeping for sale therein or thereon by such person, of such liquors, provided the following conditions are complied with," etc.

Here follow provisions as to written consent of electors, the granting by the city council of the request of an applicant for permission to sell at some stated place within the municipality, bond, police regulations, application of the statute to cities under 5,000 population, etc., which are not pertinent to the matter here under consideration. Section 2447 is as follows:

"Nothing contained in this chapter, so far as it relates to the mulct tax, shall be in any way construed to mean that the business of the sale of intoxicating liquors is in any way legalized, nor as a license, nor shall the assessment or payment of any tax for the sale of liquors as aforesaid protect the wrongdoer from any penalty now provided by law, except as provided in the next section."

The next section (2448) is summarized above. The original statute, which has been codified into these sections, is chapter 62 of the Public Laws enacted at the 1894 session of the general assembly of Iowa, and bears the following title: "An act to tax the traffic in intoxicating liquors and to regulate and control the same."

Upon the sections above cited, Scott county urgently insists that the mulct tax falls within the taxes whose payment is given priority in the bankruptcy statute. There is much force in this contention. The assessor, who returns for taxation the taxable property under the general tax laws of the state, returns the names of persons and

descriptions of property for mulct tax entry. The county auditor, who certifies and delivers for collection to the treasurer the general tax description, certifies and delivers to such treasurer for mulct tax collection the names and descriptions which he has received from the assessor. The county treasurer proceeds to collect, and, when the mulct tax becomes delinquent, the same general provisions confer power for enforcing collection as to the delinquent mulct tax and govern his action, which direct and empower him as to general taxes; and when he has advertised the sale of property for delinquent mulct tax, under the same general statutory provisions as to delinquent taxes generally, he executes to the purchaser at said sale, and in accordance with the general statutes relating to sales of property for delinquent taxes generally, a certificate of tax-sale purchase, which entitles the purchaser, at the end of the term applicable to certificates of tax-sale purchases generally, to a tax deed, executed by the treasurer in the same general manner as other tax deeds, and in accordance with the statutes applicable to other tax sales of real property, which deed carries with it the presumptions of regularity of proceedings which appertain to other tax deeds, is enforceable in like manner and to like extent in the courts, and subject to the same defenses. And, finally, the revenue, whether coming into the county or municipal treasury from payment of this mulct tax, is devoted to payment of expenses or indebtedness incurred in carrying out governmental purposes; and in this latter point it differs from the revenue arising from grading, sidewalk, paving, or other special assessment proceedings. Briefly stated, the lawmaking power of the state has expressly denominated it a "tax," speaks of it and refers to it in the different sections relating to it as a "tax," has provided for its assessment, certifying and collecting by the officers performing like general duties as to taxes generally, and in substantially the same general manner, with tax-sale certificate and tax deed, executed under same general provisions and of same general effectiveness as tax-sale certificates and tax deeds on sales for other delinquent taxes; and, lastly, the revenue coming into the county or municipal treasury from this mulct tax is placed with other taxes received therein, and expended, as such other taxes are expended, for governmental purposes. It would seem, therefore, that the lawmaking department of the state had attempted to make, and had made, the mulct tax a tax ranking with the taxes otherwise assessed, levied, and collected under the statutes of the state.

It is claimed with much apparent force that what is by the statute denominated a "mulct tax," and made a charge or lien against real estate, and assessed and collected under and through the officers who, as above pointed out, assess and collect other taxes, is either a tax or a penalty, since the statute creating it will not permit such tax to be regarded as a license. The statute (section 2447, Code of Iowa, supra) declares that the legislation creating and providing for collecting said mulct tax shall not "in any way be construed to mean that the business of the sale of intoxicating liquors is in any way legalized, nor is a license." If such mulct tax is not a license,

then is it a penalty, as that term is generally understood, or in legal contemplation? No provision is made for its imposition as a penalty. No recourse is provided to the courts for judicial inquiry or judgment, and such judicial inquiry must precede adjudging or imposing penalty. Apparently the only argument which can be brought forward as tending to prove the lawmaking body of the state intended such mulct tax should be regarded as a penalty is adduced from the section last above cited (2447), which follows the portion last above quoted with these words:

"Nor shall the assessment or payment of any tax for the sale of liquors as, aforesaid [mulct tax] protect the wrongdoer from any penalty now provided by law, except as provided in the next section."

The next section (2448) is hereinbefore stated. The "penalty now provided by law" at date of enactment of said mulct-tax statute was fine, or imprisonment, or both, to be imposed by the courts after due judicial investigation. This section (2448) does not provide for any such penalty, nor for imposing of sentence; nor is there either in the mulct-tax statute as originally enacted or in the same as codified, any such provision.

It is further urged that, if such mulct tax is not in the nature of a license, nor penalty, what is it but a tax? It is not claimed that it is in the nature of an indulgence or price paid in advance for permission to commit crime or to violate the law with impunity after such payment. It is urged that, if not a license, penalty, or indulgence, it is and must be a tax. In other words, the lawmaking body of the state having declared the mulct-tax statute is not in fact, and shall not be construed as being in law, a license, and such statute having provided no penalty for violation, it merely suspends the penalty features of theretofore existing statutes regarding traffic in intoxicating liquors when the provisions of said mulct-tax statute are complied with, and in its stead substitutes a tax, assessable and collectible in the manner pointed out. The argument favoring the position here taken by Scott county has great force. But I do not find it at this point necessary to determine its correctness.

We now turn to the consideration of the construction of this statute by the supreme court, the highest judicial tribunal of the state. Such construction, if directly and positively given, and upon the sections above cited with respect to the question herein involved, is at least to be given careful and weighty consideration, and may control the decision reached herein. Indeed, the opposing creditors contend it must control such decision. Smith v. Skow, 97 Iowa, 640, 66 N. W. 893, cited by the opposing creditors, is the only case cited, and the only one coming under my observation, wherein is discussed the question how far, if at all, this mulct tax is a tax. The decision was rendered April 10, 1896. In 1892 Skow and wife executed to plaintiff, Smith, their real-estate mortgage for the purpose of securing a promissory note. Skow subsequently conveyed the mortgaged premises to one Jones, who carried on the business of selling intoxicating liquors in a building on said premises. The mulct tax was entered against said premises on the proper tax books.

of the county. Said mulct tax, becoming delinquent, became a lien against said real estate under the sections herein above cited. Smith having brought suit to foreclose the mortgage, the county sought to have its said mulct-tax lien decreed superior to the lien of the mortgage, which was validly outstanding when the mulct tax first became a lien on the premises. The court declare that "the sole question is as to priority of liens." In Trust Co. v. Young, 81 Iowa, 732, 39 N. W. 116, and 46 N. W. 1103, that court had, in 1890, held (two of the five members of the court dissenting) that where taxes on personal property became a lien upon real estate, after the lien of a mortgage had attached thereto, such tax lien, under the phraseology of the statute making it a lien upon real estate owned by the person against whom the personal tax stood, was superior and prior to the mortgage lien. The statutes of Iowa provided that "taxes upon real property are hereby made a perpetual lien thereon against all persons except the United States and this state; and taxes due from any person upon personal property shall be a lien upon any real property owned by such person or to which he may acquire a title." Section 865, Code 1873. In Bibbins v. Clark, 90 Iowa, 230, 57 N. W. 884, and 59 N. W. 290, that court, in 1894 (its membership having been changed by the election of Judge Kinne), again took up this question, and the court (two of the majority in the former opinion now being the dissenting minority) overruled the decision in the Trust Company Case, and held the contrary doctrine, subordinating the personal tax lien to the lien of such real-estate mortgage. The phraseology of the mulct-tax statute, whereby such tax is made a lien against the real estate whereon or wherein the business is carried on (see section 2432, above cited) is closely similar to that with regard to the lien of the personal tax against real estate owned by the person against whom such personal tax is standing. See sections above quoted. When the Skow Case was decided (1896), the membership of the court was the same as when the Bibbins Case was decided. In the Skow Case (page 641, 97 Iowa, and page 894, 66 N. W.) the court say:

"As the several members of this court adhere to their former opinions touching the lien of personal taxes on real estate with reference to mortgages which exist upon real estate when such personal tax becomes a lien thereon, it is desirable to rest the determination of the question presented in this case upon another ground, upon which we all agree, and that is that this sum [mulct tax] which it is provided shall be a lien upon property, both personal and real, is not in fact a 'tax,' as we usually use that word. It matters not that the legislature, in the statute, speaks of this license or charge as a 'tax.' That does not make it a tax. It is in reality a charge or license exacted for the privilege of carrying on the business of vending liquors, which charge is made by statute a lien upon all property, both personal and real, used or connected with the business. The doctrine adhered to by a minority of the court in the Bibbins Case extends the priority of the lien of personal taxes on real estate over existing mortgages as to taxes proper; that is, general taxes. As we have said, this is not a tax, and certainly not a general tax. Not being in the nature of a general tax, and the statute not undertaking to make this charge or license a lien upon real property superior to existing liens, we discover no reason for holding it to be prior to the lien of plaintiff's mortgage. It is such a charge as attaches to, and becomes a lien on, the real estate when it is assessed, and does not take priority over the lien of a mortgage then existing upon real estate."

The contention of Scott county is that the question under determination in the Skow Case was merely the priority of liens, and was so stated by the court; and therefore the arguendo of the decision is not to be taken as the decision of the court, save as relating to such lien priority. And therefore, while this court might accept such arguendo, if the question there under consideration had been whether the mulct tax is really a tax, yet, under the circumstances, it is not binding on this court. But the court expressly say they decline to consider the case on the mere phraseology of the statute. The Trust Company and Bibbins Cases had been decided on the effect of similar phraseology in other statutes. The court say they prefer to base their decision upon a point whereon all the members of the court agree, and they then proceed to state such point as being that the "mulct tax," so called, is not a tax. There can be no doubt as to that being the point of common agreement among the members of the court who disagreed as to the effect of the phraseology employed in the similar statute. As the point stated is the basis, as announced specifically by the court, or the foundation, of the decision in the Skow Case, we cannot doubt that the decision of the court in that case must be accepted as also deciding that the "mulct tax," so called, is not a tax; and, if not a tax, then it is not properly included within the priority fixed by said section 64, cl. a. What may be the effect of the Skow decision, how far-reaching as to the methods prescribed by the mulct-tax statute for the action of the assessor, auditor, and treasurer, and how, if at all, this decision affects, modifies, or nullifies the tax certificate and tax deed issued on sales for delinquent mulct tax, it is not necessary that we here inquire. But the inquiry is pertinent, is this decision binding on this court? If so, then it becomes immaterial whether or not this court would decide this mulct-tax question, if presented as an original question, as the same is found in the Skow Case. I am convinced that this court must follow the state court in this matter. We may here leave out of consideration the principles underlying valid, constitutional taxation, as not involved in this discussion. Were we considering the merits, and, originally, whether the mulct tax is a tax, such principles would be highly pertinent, and the discussion of their application to the mulct-tax statute would be interesting. But we now start on this branch of the case with the recognition that the state of Iowa, by its highest tribunal, whose decision is controlling, in the absence of further legislation, has declared that the mulct tax is not in fact a tax. It is not for this court to contest such decided fact. The state, by its proper authorities, legislative and judicial, has enacted the statute creating or levying a tax, and then construed and determined the force and effect of such statute. And this court, after the supreme court of the state has construed it, accepts such statute as though such construction had been placed in the statute at the time of its enactment. If the statute had expressly declared that, although called a "mulct tax," the penalty or tax (or whatever the statute named it) was not in fact a tax, but only "a charge or license exacted for the privilege of carrying on the business of vend-

ing liquors," this court must coincide with the statute, and regard it, not as a tax, but merely as "a charge which attaches to, and becomes a lien on, the real estate," etc. Again, it is not for this court, but rather for the state, through its supreme lawmaking body, to declare that a claim that may thereafter exist in its favor shall be a tax or not. Unless the state so shapes and legislates with regard to such claim as that it becomes a tax, and not a mere charge, this court may not attempt to supply whatever, in the judgment of the supreme court of the state, may be required to make it a tax. The bankruptcy statute certainly intended this priority of payment should be given only to those claims existing in favor of the state or its municipal corporations, which the state had clothed, not only with the garb, but with the actual nature, the "in reality," of a tax. This court, therefore, must decline to give to the claim presented greater force or effect than the state has itself declared the claim shall possess. It should be noted that the question brought up for review relates only to priority of payment out of personal assets. The case might have presented different features, had real estate against which the statute attempts to place a lien for delinquent mulct tax been sold therefor, and we were now determining priority of liens out of the proceeds. It follows that the decision of the referee, that the mulct-tax claim is not entitled to priority of payment under section 64, is sustained, at the cost of the opposing creditor, Scott county; and the referee will proceed with the settlement of the estate accordingly.

## Order.

Now there coming on to be heard the question, at the instance of said county of Scott. certified for review to this court by John M. Helmick, Esq., referee, as to demanded priority of payment out of said estate of the claim herein proven in favor of the county of Scott. state of Iowa, Julius Lisher and William Theophilus appearing for said county of Scott, and Isaac Petersberger and T. A. Murphy for creditors opposing said priority of payment, and arguments of counsel having been heard and the court fully advised, it is by the court ordered and adjudged that the action of said Referee Helmick, in refusing to allow and order priority of payment herein of the said claim of the said county of Scott, be, and is hereby, approved and affirmed, at the costs of said county of Scott. The said referee will tax and collect the costs incident to and occasioned by said certifying and hearing of said matter, and will proceed to settle said estate, in accordance with this order.