CARR et al. v. TRIVETT et al., No. 1.—143 S. W. (2d) 900.

Eastern Section. June 25, 1940.

Petition for Certiorari Denied by Supreme Court, October 5, 1940.

Guinn & Mitchell, of Johnson City, for appellants.
Chase & Neel, of Johnson City for appellees.

McAMIS, J. This case is here for a review of the chancellor's decree enjoining defendants, Ola Mae Trivett et al., from operating a tourist home upon a lot purchased from complainants as a part of a restricted residential subdivision known as Sequoyah Hills near Johnson City, Tennessee.

From the findings and decree of the chancellor, defendants have appealed and assigned errors raising, as the primary insistence, that the operation of a tourist home is only incidental to the use of the premises for residence purposes and does not constitute the conduct and operation of a business. It is also insisted that Sequoyah Hills, for reasons to be hereinafter noted, is not, and cannot be, developed as an exclusive residential section, and that complainants are estopped to invoke the restrictive covenants of defendant's deed.

It appears that for many years prior to 1937 complainants owned a valuable tract of land just outside the corporate limits of the city of Johnson City extending for a distance of more than 2,000 feet along the eastern side of U. S. Highway 11 E and having a depth of approximately 400 feet. This property was then seeded to alfalfa. The only building upon it was an old barn used by complainants as a tool shed and for the storage of hay. They also owned a tract of farm land immediately across the highway upon which was also located a barn used by complainants in their farming operations.

Between the southern extremity of this property and the city limits of Johnson City, and for a distance of more than a mile, property adjoining the highway is exclusively devoted to residential purposes. As we understand the record, this property is also restricted to residential purposes. Homes in this section range, in cost of construction, from $8,000 to $15,000.

Immediately to the north of complainants' property and on the eastern side of the highway is the home of Dr. Metzer. On the opposite side of the highway there is another residence. It appears that both of these residences are of expensive construction. A little further to the north and about 300 yards from complainants' property there was located, at the time of the sale to defendants, a barbeque stand known as "The Fat Boy."

About the year 1937 complainants expended a large sum of money in extending a water main from the corporate limits of Johnson City. About the same time the property on the east side of the highway was surveyed and mapped. The property was divided into 44 lots of a frontage of 50 feet each. A large sign was thereupon erected upon the premises advertising the property as "Sequoyah Hills, an Exclusive Residential Subdivision."

On March 21, 1938, defendants purchased lots 35 and 36 by deed containing the following restrictions:

"1. That said property shall not be used except for residential purposes and that no building or structure shall be erected thereon to be used for the purpose of any trade, manufacture or other business.

"2. That no dwelling house or residence shall be built on said property having a frontage of less than 100 feet on the front property line, which shall front on Federal Highways 11 E, 19 W and 23, and shall conform on the established building line, the front of which structure shall not be less than 100 feet from the front line of said property, and 12½ feet from each of the two side lines of said property.

"3. That no dwelling house or residence shall be built on less than 100 feet frontage and to not cost less than $6,000.00 on this or any other property that fronts on said Federal Highways 11 E, 19 W and 23.

"4. That neither said property nor any residence nor dwelling house erected thereon, shall be sold, leased or rented to any person of African descent."

A further provision of the deed bound complainants not to sell any other lots in said subdivision except subject to the same restrictions as provided in defendants' deed.

Prior to the conveyance of these two lots to defendants, complainants had conveyed the two lots immediately adjoining to another purchaser. This deed contained the same covenants and restrictions as set out in defendants' deed. It appears that the dwelling house erected by defendants, as well as that of the other purchaser, cost in excess of $6,000 and otherwise complied in every particular with the building restrictions contained in these deeds except that defendants' house, when completed, was found to be only 11 feet from the divisional property line instead of 12½ feet as required by the terms of their deed. No objection appears to have been made at any time by any interested party to this minor deviation from the strict terms of the restrictions. Complainants continued to harvest the alfalfa grown on the unsold portion of the subdivision and to use, without objection, the old barn for the purposes mentioned. A small amount of tobacco also appears to have been grown by the purchaser of lots adjoining defendants' lots. It does not appear that complainants knew of this fact.

It appears that defendants knew, at the time they purchased their lots, that Sequoyah Hills was being advertised and sold as an exclusive residential development, and, we infer, that they had no intention of operating a tourist home upon their premises. However, about 30 days after the completion of their house, they placed a sign along the highway advertising a tourist home. Upon objection

from complainants they removed the sign about October 1, 1938, and did not replace it until in the spring of 1939. Complainants thereupon made further protest but defendants declined to remove the sign or discontinue the conduct of a tourist home on the premises, and the present suit followed.

The proof shows that four of the eight rooms in defendants' house are used during the busy season and when necessary for the accommodation of tourists. Their premises are regularly inspected by hotel inspectors of the State and they have procured the required license for the operation of a tourist home. It is shown that they maintain a register for registering guests similar to the practice of hotels and, in addition to the sign in front of the property which is kept lighted at night by electric light, they also solicit guests through two or more filling stations where cards are kept on display and handed to tourists. According to defendants' testimony they accommodate, during the busy season, from 12 to 15 tourists per week from which they derive an income of from 75 cents to $1 each.

The primary question to be determined is whether, under these circumstances, the property is being used for any purpose other than residential purposes and whether the conduct and operation of a tourist home constitutes the use of the property for "the purpose of any trade, manufacture or other business." We think, under the authorities to be cited, this question must be resolved in favor of complainants and the decree of the chancellor affirmed unless, as defendants insist, the subdivision in question, because of its surroundings, cannot be maintained as an exclusive residential section.

In Laughlin v. Wagner, 146 Tenn., 647, 653, 244 S. W., 475, 476, in determining the rights of parties bound by a similar restrictive covenant, the court said: "Unquestionably it is an established rule of law that a person owning a body of land may sell portions thereof and make restrictions as to its use for the benefit of himself as well as those to whom he sells other portions of the land, and he may invoke the remedy of injunction to prevent the violation of the same, in proper cases, provided of course the restriction is not against some public violation. There is certainly good reason in this rule when applied to the common practice of inserting in deeds a restriction such as tends to create a residential section against those uses which would tend to mar the beauty and detract from the value of the property by uses inconsistent with the uses intended. In such deeds the grantee does not acquire an absolute and unqualified title, but it is a part of the title which he accepts, that the use of the land shall be limited and be restricted in use as provided by the deed. 13 Cyc., 718; 7 R. C. L., 1114; Pomeroy's Equity, Vol. 2, Sec. 1695."

While restrictive covenants are to be strictly construed and will not be extended by implication to include limitations upon the free use of the property not plainly prohibited by the terms of the deed (Emory v. Sweat, 9 Tenn. App., 167) such restrictions are to be given a fair and reasonable meaning so as to ascertain the intention of the parties and, it is said, to discover the intention of the parties it is always necessary to consider the situation of the parties and the surrounding circumstances. White v. Gulf Refining Co., 156 Tenn., 474, 476, 2 S. W. (2d), 414.

The restrictive clause here under consideration is clear and unambiguous and cannot be reasonably construed otherwise than as a prohibition against the use of the property for any purposes other than for residential purposes. We do not think it may reasonably be held that a use of the property is only incidental to its use as a residence when one-half of the rooms in the building are set apart and used for a purpose not incidental to the occupancy of the premises as a dwelling but in the conduct of a licensed operation, held out and advertised to the general public, conducted in the manner shown by the record in this case and from which the owner derives a substantial income. We think such an undertaking is substantially different from the incidental use of a dwelling for purposes, not strictly residential in character, from which the owner derives some income or profit but which may not, by any fair construction, be termed a business or trade.

Similar restrictive covenants have been before the courts of other states and of England and have been held in numerous cases to exclude the operation of boarding houses and guest houses.

In Sayles v. Hall (1911), 210 Mass., 281, 96 N. E., 712, 713, 41 L. R. A. (N. S.), 625, Ann. Cas. 1912D, 475, where it appeared that for three seasons, at a summer resort, boarders had been kept in a private dwelling, but without displaying any sign or advertising in any way that boarders were kept there, and the average number of boarders and roomers kept at any one time during the current or preceding season was about twelve, most of whom stayed for about two weeks, a covenant (in a deed) restricting the buildings on the premises to "a dwelling house, to be used exclusively as a residence, for a private family," was held to have been violated.

And conducting a rooming house, in which there lived nine roomers, was held a violation of a restriction that the premises were to be used "for residence purposes only" in Dingeman v. Boerth's Estate, 1927, 239 Mich., 234, 214 N. W., 239, where the court said: "If one may conduct a business of renting rooms for hire and be within the restrictions, then one should also be entitled to conduct the business of renting rooms and serving meals (a hotel or boarding-house), or the business of serving meals alone (a restaurant). But either use in my opinion would be conducting a business, and, con-

sequently, a violation of the restriction. So, too, running a rooming house or lodging house is clearly a business venture and contrary to the intent and purpose of the restrictive covenants.''

So, erection of a college fraternity house, which was said to approximate more nearly the character of a club, boardinghouse, or apartment house with added recreational privileges, than a family dwelling house, has been held violative of a restrictive covenant limiting use of the premises to ''one single private dwelling house.'' Seeley v. Phi Sigma Delta House Corp. (1928), 245 Mich., 252, 222 N. W., 180, 181, where it was observed that definitions adopted for legislative purposes in housing codes and zoning ordinances could not be employed in interpreting or construing a restrictive covenant running with the land.

In Hobson v. Tulloch [1898], 1 Ch. (Eng.), 424, a proposed use of a large house to lodge and board pupils who were to attend a school about a half mile distant, and were to live there, paying board, with the school's proprietress, members of her family, and governesses at the school, was regarded as carrying on the occupation of the house as a boardinghouse, ''a species of business,'' and not using it as a private residence in the ordinary acceptation of the term, and so violative of a covenant in a deed ''not to use and occupy, or permit to be used or occupied, the said messuage or dwelling house for the purpose of any trade or manufacture, or for any other purpose than a private residence.''

And the distinction between boardinghouses and residences or private dwelling houses was again brought out in Chatsworth Estates Co. v. Fewell [1931], 1 Ch. (Eng.), 224, where a covenant against using premises for any trade or business or ''otherwise than as a private dwelling house'' was enforced against a person who used his house as a ''guesthouse,'' and where the decision turned upon the point that the neighborhood still remained residential notwithstanding that other boardinghouses, etc., had sprung up therein.

In John Hancock Mut. L. Ins. Co. v. Davis (1931), 173 Ga., 443, 160 S. E., 393, it was held, per curiam, that the operation of a boardinghouse did not violate a covenant in a deed to the effect that the land should not be used otherwise than for residence purposes, but the presiding justice, dissenting, who noted that there were nineteen boarders in the house, the use of which as a boardinghouse was sought to be enjoined, considered that that use constituted the operation of a business, thereby violating the covenant.

■ While we agree with the insistence of learned counsel for defendants that the renting of a room or two or the keeping of a small number of boarders who eat at the family table or the occasional renting of a spare room to a transient not attracted to the premises by the advertisement or holding out of the premises as a place where transients are accommodated for hire would not be

violative of the spirit and purpose of the restrictions here under consideration, we do not think the same may reasonably be said of the operation of a tourist home as advertised and conducted by defendants. Having in mind the type and character of subdivision which both complainants and defendants are presumed to have had in mind when defendants purchased their lot, we think such operations are beyond the spirit and purpose of the restrictions and tend to break down the general protective force of this and other restrictions intended as a mutual benefit and protection to all parties who might establish private dwellings in that section.

■ The proof tends to show that such operations, and particularly the operation of a tourist home in the vicinity, are not favorably regarded by prospective purchasers in a highly restricted residential section and that, because of the operation of a tourist home by defendants, complainants have been unable to sell lots. The proof shows that other realtors who have had experience in placing highly restricted lots upon the market in Johnson City are of opinion that a tourist home in such a community, though operated upon a high plane as in the case at bar, tends to depreciate the value of other lots in the vicinity. This appears to us to be a reasonable conclusion. Complainants have irrevocably stamped other lots in the subdivision as residential lots and, though other lots might bring a higher price if sold for business purposes, they are concluded from selling any lot for such purposes. It is this mutuality of the benefits and burdens arising out of such restrictive covenants which has influenced courts to sustain such restrictions whenever they are found to be reasonable in scope and purpose and capable of being executed and observed by all affected parties.

■ We are further of opinion that the surroundings are not such as to render oppressive or inequitable the enforcement of the restrictions. The proof shows without question that complainants' property is well suited for a high-class residential subdivision both from the standpoint of topography and location. All of the property between their subdivisions and the business section of Johnson City is of a similar type and none of it is used for business, except that there is located within the city limits a tourist home similar to the one operated by defendants. We think it is too remote in point of location to affect complainants' property in any manner. It is true Dr. Metzer operates a tourist home 311 feet north of the northern extremity of Sequoyah Hills and that on the opposite side of the highway and a distance of 300 yards from complainants' property a barbeque stand has been operated. Both the tourist homes and the barbeque stand were in operation at the time defendants purchased their lots and it is not shown that there has been any material change in the character of the neighborhood since they pur-

chased except that "The Fat Boy" has been purchased by a property owner in the vicinity for the purpose of having it removed.

We do not think any of these conditions shown to have existed when defendants purchased their lots can be interposed as establishing the impracticability of maintaining a restricted residential section within an area which is sufficiently large to afford protection to persons desiring to establish and maintain a private dwelling. Complainants would not be heard to insist that, because of conditions existing at the time defendants purchased their lot, the maintenance of the restrictions upon other lots had become unfeasible and oppressive and, upon that account, to sell lots for business purposes. We see no reason why defendants who purchased with their eyes open should be permitted to ignore the restrictions while complainants cannot. Both parties entered into the covenant "for better or worse" and neither can escape until future developments render the enforcement of the covenants impossible or unjust and oppressive.

██ We find also without merit the insistence that complainants are estopped by reason of having harvested the alfalfa growing on these premises or because the other purchaser of lots grew a small quantity of tobacco on their lots unknown to complainants so far as the record shows. The harvesting of the alfalfa tended to beautify the remainder of the subdivision and was not inconsistent, in any practical sense, with its development as an exclusive residential section. We do not think a deviation of a foot and a half in the construction of defendants' residence or that of the adjoining purchaser from the divisional line renders the covenants and restrictions inoperative, especially in view of the absence of any showing that complainants knew of, or acquiesced in, this minor violation of the restrictions.

We find no error in the decree of the chancellor, and it results that all assignments are overruled and the decree below affirmed, with costs.

Portrum and Ailor, JJ., concur.