Hubert D. WALLER et al.

v.

Jack E. THOMAS and wife, Blanche Thomas.

Court of Appeals of Tennessee, Eastern Section.

July 28, 1976.

Certiorari Denied by Supreme Court Oct. 4, 1976.

Jack W. Bowers, with Foley, Bowers & Bell, Knoxville, for appellants.

Harry W. Asquith, with Asquith, Ailor & Jones, Knoxville, for appellees.

## OPINION

SANDERS, Judge.

Plaintiffs have appealed from a Chancery decree denying their application for an injunction to enjoin the Defendants from violating restrictive covenants of a subdivision.

The Plaintiffs-Appellants, Hubert D. Waller, Lynn Leopper and Kenneth Yarnell, filed suit in the Chancery Court of Knox County against the Defendants-Appellees, Jack E. Thomas and wife, Blanche Thomas. The suit seeks to enjoin the Defendants from operating a beauty salon in their home, allegedly in violation of certain restrictive covenants imposed on the lots in the subdivision in which both the Plaintiffs and Defendants live.

The restrictive covenants which the Plaintiffs contend the Defendants are violating are as follows:

"1. All lots in the Subdivision shall be known and described as residential lots. No structure shall be erected, altered, placed or permitted to remain on any of said lots other than buildings for residential purposes not to exceed two and one-half (2½) stories in height. Unconnected private garages and/or outbuildings shall be constructed on said lots only behind the front wall of the residence constructed thereon and of material similar to the residence, and no other outbuildings shall be erected on said lots, except for servants quarters."

"3. No merchantile business or industrial trade or activity shall be carried on upon any lot nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood."

The case was tried before the Chancellor, who found the issues in favor of the Defendants.

The Plaintiffs have appealed and assigned error. The Plaintiffs' first two assignments of error contend the Chancellor erred in his interpretation of the restrictive covenants.

The record shows the subdivision in which the Plaintiffs and Defendants live is a high-

class residential subdivision. The Defendants purchased their house after it had been constructed. It is a one-story brick dwelling and, as originally constructed, had a one-car attached garage. After Defendants purchased the house they removed the garage doors and replaced them with sliding, glass doors. They installed plumbing and otherwise remodeled the interior of the garage area and converted it into a beauty salon. The Defendant, Blanche Thomas, is the sole operator of the beauty salon and there are no signs displayed or other exterior evidence depicting it as a beauty salon.

The Chancellor held that the operation of the beauty salon did not constitute a violation of the restriction against carrying on a "merchantile" or "industrial" trade and, accordingly, there was no violation of the restricted use.

The Plaintiffs insist this was error and say restriction No. 1 prohibits the use of the property for any purpose other than residential.

■ Our courts have long recognized several established rules of construction regarding restrictive covenants, which can be stated as follows: Although the law recognizes the validity of restrictive covenants, they are not favored because such covenants are in derogation of the unrestricted enjoyment of the fee. Therefore, restrictive covenants are to be strictly construed and will not be extended by implication and any ambiguity in the restriction will be resolved against the restriction. See *Emory v. Sweat,* 9 Tenn.App. 167 (1927); *Carr v. Trivett,* 24 Tenn.App. 308, 143 S.W.2d 900 (1940); *Lowe v. Wilson,* 194 Tenn. 267, 250 S.W.2d 366 (1952); *Hamilton v. Broyles,* 57 Tenn.App. 116, 415 S.W.2d 352 (1966).

■ It is also a rule of construction that the court is required to give a fair and reasonable meaning to restrictive covenants in order to determine the parties' intention and once the intention of the parties is ascertained, the covenant will be enforced, provided it serves a legitimate purpose and does not constitute a nuisance per se. *White v. Gulf Refining Co.,* 156 Tenn. 474, 2 S.W.2d 414 (1928); *Hamilton v. Broyles, supra.*

An examination of the cases in Tennessee reveals that our courts have not addressed the issue of whether or not the incidental use of a dwelling house for operating a beauty salon violates a covenant restricting its use to residential purposes; however, there are a number of cases in other jurisdictions which have addressed this particular issue. A review of these cases reveals that the courts have generally recognized, either explicitly or by implication, that an incidental use of a dwelling house for the operation of a beauty salon does not necessarily constitute a violation of a covenant restricting the use of the dwelling to residential purposes; whether such incidental use constitutes a violation depends upon the wording of the particular covenant and the extent and manner in which the incidental use is conducted.

In *Monigle v. Darlington,* 32 Del.Ch. 137, 81 A.2d 129 (1951), a case factually similar to the case at bar, the court denied injunctive relief against the defendant's operation of a beauty shop in the basement of her residence. The deed contained a provision that the property should be used for residential purposes only and another provision prohibiting the erection and maintenance of any noxious, dangerous, or offensive thing, trade or business whatsoever on the property. As in the case at bar, the exterior of the dwelling remained unaltered except for a small sign with the words "Darlington" printed on it in one of the windows. The rationale used by the court in determining the prohibitory intent of the covenant is noteworthy. The court construed the first restriction in the covenant as applying to the use of the premises in addition to a restriction on the type of structure which might be erected and said that the restriction on use was necessarily limited by the prohibited uses enumerated in the second restriction in the covenant.

In contrast, the Delaware court barred the operation of a beauty salon in a residence in the case of *Laux v. Phillips,* 37 Del.Ch. 435, 144 A.2d 409 (1958). The court

distinguished the result from that reached in *Monigle v. Darlington, supra,* by pointing out the differences in the wording of the restrictions. In *Laux v. Phillips, supra,* the first clause of the covenant was the decisive clause providing that: (1) no structure should be used for carrying on any business, trade, or calling and, for this reason, it was unnecessary to determine whether the second clause of the restrictive covenant was violated because the beauty shop fell within the intended prohibition of the first clause. While the result may vary, the reasoning of the court in *Monigle v. Darlington,* and *Laux v. Phillips, supra,* is consistent.

The reasoning of the Delaware court is not in conflict with the courts of this state. The court is aware of only one case in Tennessee specifically addressing the issue of the incidental use of a dwelling for business purposes under a restrictive covenant that it be used for residential purposes, *Carr v. Trivett, supra.* The court in *Carr* enjoined the incidental use of a dwelling for a tourist home in a restricted location, but the case is distinguishable from the case at bar for two reasons: first, the restrictions on the use of the property contained in the deed were clear and unambiguous, using language as follows: ". . . said property shall not be used except for residential purposes and that no building or structure shall be erected thereon to be used for the purpose of any trade, manufacture or other business"; and, second, the extent of the use of the premises for business purposes went beyond incidental use. Approximately one-half of the dwelling was being used in connection with the business.

■ *Carr v. Trivett, supra,* is important however, because the case illustrates that the courts of Tennessee are in agreement with the general proposition that whether an incidental use of residential property for business purposes is in violation of a covenant restricting use to residential purposes depends upon the wording of the restriction and the extent and nature of the use.

■ If the restrictions in the case at bar merely contained the statement that the lots in the subdivision were to be used for residential purposes as stated in the first restriction in the covenant without further elaboration, the Appellants would be entitled to relief. However, the restrictions, as noted in the Chancellor's memorandum opinion, contain other specific restrictions. This elaboration, in light of the decision in *Monigle v. Darlington, supra,* can only be interpreted as a limitation of the broader restrictive language contained in the first restriction.

■ The holding by the Chancellor that the Defendants were not engaged in a "merchantile business or industrial trade or activity" is supported by the case cited in the Appellees' brief of *State Farm Insurance v. Rowland,* (1965), 111 Ga.App. 743, 143 S.E.2d 193, where the court said:

"Now the next question is, was this structure used in whole or in part for mercantile purposes.

"Webster defines 'mercantile as pertaining to merchants or to the business of merchants.' (Quoted *In Re San Gabriel Sanitorium Company,* 9 Cir., 95 F. 276 (271).

"In addition to this, we have these further definitions:

"The word 'mercantile,' in its original acception pertains to the business of merchants and has to do with trade or buying and selling of commodities. *In Re Cameron Town Mutual Fire, Lightning & Windstorm Ins. Co.,* 8 Cir., 96 F. 756, 757. *People v. Fed. Security Co.,* [*People v. Fed. Security Co.,* 255 Ill. 561, 99 N.E. 668]. (Cited in Words & Phrases, Vol. 27, page 95.)

" 'The term "mercantile business" is defined to mean the buying and selling of articles of merchants as an employment.' *Veazey Drug Co. v. Bruza,* 169 Okl. 418, 37 P.2d 294.

" 'A merchant' is one who is engaged in buying and selling goods, wares or merchandise for gain or profit. 'Mercantile' pertains to the business of merchants. *Cleve v. Mazzoni,* Ky., 45 S.W. 88, 89.

"A shoe shine parlor and hat cleaning establishment is not a 'mercantile establishment', within the meaning of a lease providing that the premises shall not be used for other than mercantile purposes. *Cesar v. Virgin*, 207 Ala. 148, 92 So. 406, 407, 24 A.L.R. 715."

Plaintiffs' first two assignments are overruled.

The Plaintiffs' third assignment of error states that the Chancellor erred in finding that the Defendant's beauty salon did not create conditions in the subdivision which constitute a nuisance or annoyance in accordance with the third restriction in the restrictive covenants. The main thrust of the Plaintiffs' complaint appears to be that patrons of the Defendant's establishment would park their cars on the street, thereby creating a hazardous condition near the entrance to the subdivision and that the existence of the beauty salon caused the depreciation of the value of the land in the subdivision.

■ The proof reflects that the parking problem complained of existed only for a brief period of time prior to the installation of a circular driveway in front of the Defendants' house for the purpose of accommodating patrons.

■ With respect to the allegation that the Defendant's beauty salon caused a depreciation of the value of the land in the subdivision, the proof is inconclusive. The proof reveals that the Defendant maintains no sign on her house or advertising for her business and proof regarding the sale of a similar house in the subdivision did not reveal that the seller realized any reduction in the value of his house or that the buyer was even aware that the beauty parlor was in existence.

The issues raised in Plaintiffs' third assignment are factual matters which the Chancellor resolved against them.

Our review of nonjury cases such as this is governed by the following principles as set out in *Roberts v. Ray*, 45 Tenn.App. 280, 322 S.W.2d 435:

"While the hearing of this case here is de novo, it being a non-jury case, the Trial Judge's conclusion is supported by a presumption of correctness unless the evidence preponderates against it (T.C.A. Sec. 27–303); and the burden is on defendant-appellant to show that the evidence does preponderate against it. *Jackson v. Jackson*, 25 Tenn.App. 198, 202, 154 S.W.2d 797; *Morrell v. Republic Fire Ins. Co. of Pittsburg*, 168 Tenn. 137, 140, 76 S.W.2d 317, 318."

We cannot say the evidence preponderates against the Chancellor's findings.

Plaintiffs' assignments of error are overruled. The decree of the Chancellor is affirmed and the cost of this appeal is taxed to the Appellants.

PARROTT, P. J. (E. S.), and GODDARD, J., concur.