IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 12, 2009 Session

# ERIC KERNEY, ET AL. v. GARY ENDRES, ET AL.

Appeal from the Chancery Court for Sullivan County
No. K0033175(L)      E.G.Moody, Chancellor

No. E2008-01476-COA-R3-CV  - FILED JUNE 30, 2009

Eric Kerney and wife, Cassandra Kerney, brought this suit to enjoin the operation of a beauty salon by defendant Susan Endres in the home owned by her and her husband, Gary Endres.  The Kerneys and the Endreses are adjoining homeowners in the Plantation Manor Subdivision in Kingsport.  The properties are subject to a restrictive covenant limiting their use to residential and forbidding commercial use.  Following a bench trial, the court found the salon was merely incidental to the residential use and, as a consequence, did not violate the restriction.  The court did, however, enjoin any expansion of the business.  Plaintiffs appeal.  We vacate the judgment of the trial court and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Margo J. Maxwell and Gwendolyn M. Kerney, Knoxville, Tennessee for the appellants, Eric Kerney and Cassandra Kerney

Gary Endres and Susan Endres, Kingsport, Tennessee, appellees, *pro se*.

## OPINION

### I.

This is a timely appeal from the trial court's opinion and order filed June 5, 2008.  We will quote at length from that opinion as an accurate summary of most of the evidence presented.

> 1.  The parties stipulated the following facts in their Joint Pretrial Statement:

a.  The Plaintiffs, Eric and Cassandra Kerney . . . are residents of the Plantation Manor Subdivision . . . in Sullivan County, Tennessee, having the address of 168 Coralwood Drive, Kingsport, Tennessee 37663.

b.  The Defendants, Gary Endres and Susan Endres . . . are residents of the Plantation Manor having the address of 160 Coralwood Drive, Kingsport, Tennessee 37663. . . .

c.  Both the Kerneys and the Endreses live in the cul-de-sac end of Coralwood Drive.

d.  The developer of Plantation Manor, Robert Brooks Piercy, has previously submitted an affidavit that he intended that Plantation Manor be a strictly residential neighborhood.

e. . . . . [T]he Endreses' chain of title contains a prior Deed that provides, in relevant part, that the Endreses' Property:

(1)  "shall be used exclusively . . . for residential purposes";

(2)  "not . . . for any commercial undertaking"; and

(3)  that these "covenants run with the land."

f.  The Endreses have opened a beauty salon called "California Cuts," on their property.

g.  The Endreses' salon business does not have any employees other than themselves, does not have any set hours, takes customers" by appointment only", works on only "one customer at a time", and is usually open "a few days a week, during the day."

h.  The Endreses' salon business has no advertisement signage on the exterior of their home or on the Endreses' property, nor have the Endreses created "any other alterations to the appearance of the property that would indicate that the property is being used as anything other than for [']residential use[']".

i.  The Kerneys have requested the Endreses to cease operating the beauty salon on their property as violative of the Covenants, but the Endreses have refused to do so.

j. One of the main reasons the Kerneys purchased a home on the cul-de-sac was to raise their child and future children on a dead-end street where they could play safely.

*   *   *

4. The Endreses' income from the beauty salon for July 1, 2006 to June 30, 2007 was $13,472.00.

5. The Endreses' appointments for the beauty shop averaged 63 per month for the period from January 1, 2007 to December 31, 2007.

6. The Endres family occupies all but one room of their residence.

7. The beauty shop occupies one 12' x 14' room.

8. Susan Endres testified that she buys all of her supplies from a distributor in Johnson City and that she picks them up.

9. Susan Endres testified that UPS does not make deliveries to her house for the beauty shop and that any UPS deliveries were personal.

10. Susan Endres testified that the beauty shop has no employees.

11. Susan Endres testified that the beauty shop did not have a sign.

12. Susan Endres testified that the beauty shop never had more than two customers at a time, usually only one, and that they parked in her driveway most of the time.

13. Susan Endres testified that:

a. An auto detailing business was conducted on tax parcel 46 for two or three years;

b. A daycare was operated on tax parcel 47 for two years;

c. A jewelry and vending related business has been operating on tax parcel 48 for several years;

d. The Endreses have operated a one chair beauty salon on tax parcel 49 for four years;

e.  A swimming instruction business has been operating on tax parcel 51 during the summer months for six years and whose services the Kerneys have used; and

f.  A landscaping and lawncare business has been operating on tax parcel 52 for several years and whose services the Kerneys have also used.

14.  Pam Sandage, who has lived directly behind the Endreses for twenty-one years, corroborated Susan Endres' testimony about the businesses being operated out of nearby residences and also testified that an accounting business has been operating out of another residence for some time.

15.  Eric Kerney testified that his wife is currently doing some business related internet work on tax parcel 50;

16.  Eric Kerney testified that he knew about the lawnmowing business, the vending related business and the accounting business.

Based on the above findings, the trial court reached the following "Conclusions of Law":

The Endreses are bound by the restrictive covenants contained in the prior deed in their chain of title which limits the use of their property to residential purposes and excludes commercial purposes. However, from the stipulated facts and uncontradicted testimony the Court finds that the Endreses['] use of their property for commercial purposes is merely incidental to their use of it for residential purposes. They only use a 12' x 14' room of a six room house for a one chair beauty shop; the shop has no employees; the residential appearance hasn't been altered; the beauty shop does not have a sign; there are never more than two customers at a time and usually only one; the customers primarily park in the driveway; the income from the beauty salon was only $13,472 for July 1, 2006 to June 30, 2007; the appointments averaged sixty-three per month during 2007 and the beauty shop does not receive deliveries.

The Court finds the same facts are persuasive that the Endreses are not causing a nuisance per se.

The testimony also supports their position that the character of the neighborhood has changed. . . . However, in view of the Court's ruling on the "restrictive covenants" issue which resolves this matter, it is not necessary to rule on this issue.

-4-

\* \* \*

. . . Although the Court finds that the Endreses have not violated the restrictions in regard to residential use, it finds that a significant change in their business would violate them.

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED that Gary Endres and Susan Endres be and they are hereby enjoined from expanding their beauty shop business which includes, but is not limited to, increasing the shop size, adding employees, extending the hours of operation, advertising the business, increasing signage, changing the residential appearance and increasing the customer base.

## II.

The issues presented for review, as stated by plaintiffs, are:

Did the Trial Court err in ruling that Defendants' use of their residential property for a beauty salon business was "incidental" use that did not violate the restrictive covenants that the property shall be used for residential purposes only and not "any commercial undertaking"?

Did the Trial Court err in finding that the testimony supported Defendants' position that the character of the neighborhood has changed, where the Trial Court declined to rule on that issue?

## III.

## A.

A trial court's findings of fact are reviewed *de novo* upon the record and accorded a presumption of correctness unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d). A trial court's conclusions of law, however, are reviewed *de novo* with no presumption of correctness. ***Ganzevoort v. Russell***, 949 S.W.2d 293, 296 (Tenn. 1997). The construction to be given a restrictive covenant is a question of law. *See* ***General Bancshares v. Volunteer Bank & Trust***, 44 S.W.3d 536, 540 (Tenn. Ct. App. 2000).

B.

Plaintiffs argue that the trial court erred in holding defendants' beauty shop did not violate the restrictive covenant. They also contend that the concept of incidental use employed by the trial court is simply inapplicable in the context of a specific prohibition of the incidental use.

A good summary of the law applicable to restrictive covenants is found in *Maples Homeowners Ass'n, Inc., v. T &R Nashville Ltd. Partnership*, 993 S.W.2d 36, 38-39 (Tenn. Ct. App. 1998).

> Covenants, conditions, and restrictions such as [subdivision restrictions] are property interests that run with the land. They arise, however, from a series of overlapping contractual transactions. Accordingly, they should be viewed as contracts, and they should be construed using the rules of construction generally applicable to the construction of other contracts.
>
> The courts enforce restrictions according to the clearly expressed intentions of the parties manifested in the restrictions themselves. We give the terms used in restrictions their fair and reasonable meaning, and we decline to extend them beyond their clearly expressed scope. We also construe the terms of a restriction in light of the context in which they appear.
>
> When the restriction's terms are capable of more than one construction, we should adopt the construction that advances the unrestricted use of the property. . . . [W]e should resolve all doubts concerning a covenant's applicability against applying the covenant.

*Id*. (Citations omitted.)

We have been made aware of one case in this state involving an in-home beauty salon challenged as a violation of a residential restriction. *Waller v. Thomas*, 545 S.W.2d 745 (Tenn. Ct. App. 1976). *Waller* was not mentioned in the trial court's ruling. Defendants argue that *Waller* is controlling. Plaintiffs argue that the language of the restriction is the controlling factor and that the language in the present case is different from the language in *Waller*. We agree with plaintiffs.

The restrictions at issue in *Waller* were, in pertinent part, as follows:

> 1. All lots in the Subdivision shall be known and described as residential lots. No structure shall be erected, altered, placed or permitted to remain on any of said lots other than buildings for residential purposes. . . .

* * *

3. No mercantile business or industrial trade or activity shall be carried on upon any lot . . . .

*Id*. at 746. The ***Waller*** court noted that had the restrictive covenant stopped with the first paragraph, the beauty salon would have clearly been in violation of the restriction. The language in paragraph 3, however, modified, or elaborated on, the broader language of paragraph 1. "This elaboration . . . can only be interpreted as a limitation of the broader restrictive language contained in the first restriction." *Id*. at 748. Upon determining from secondary sources that the language in paragraph 3 required *the buying and selling of goods and wares for* profit, the court construed the restriction as falling short of a complete prohibition of business use.

In reaching its holding, ***Waller*** carefully distinguished ***Carr v. Trivett***, 143 S.W.2d 900 (Tenn. Ct. App. 1940). ***Waller***'s comments about ***Carr*** are helpful for our consideration of the present facts.

> The court is aware of only one case in Tennessee specifically addressing the issue of the incidental use of a dwelling for business purposes under a restrictive covenant that it be used for residential purposes, ***Carr v Trivett***, *supra*. The court in ***Carr*** enjoined the incidental use of a dwelling for a tourist home in a restricted location, but the case is distinguishable from the case at bar for two reasons: first, the restrictions on the use of the property contained in the deed were clear and unambiguous, using language as follows: " . . . said property shall not be used except for residential purposes and that no building or structure shall be erected thereon to be used for the purpose of any trade, manufacture or other business", and, second, the extent of the use of the premises for business purposes went beyond incidental use. Approximately one-half of the dwelling was being used in connection with the business.
>
> ***Carr v. Trivett***, *supra*, is important however, because the case illustrates that the courts of Tennessee are in agreement with the general proposition that whether an incidental use of residential property for business purposes is in violation of a covenant restricting use to residential purposes depends upon the wording of the restriction and the extent and nature of the use.

***Waller,*** 545 S.W.2d at 748.

We have examined ***Carr*** and have no quarrel with ***Waller***'s characterization of ***Carr***. We believe, however, notwithstanding that ***Waller*** involved a beauty salon, the present case is more like ***Carr*** than ***Waller***. ***Waller*** involved a broad positive commitment to residential use followed by a narrowing negative prohibition against only mercantile uses which the court interpreted to mean the selling of goods and wares for profit. ***Carr*** involved a broad commitment to residential purposes followed by an equally broad negative prohibition against "the purpose of any trade, manufacture

-7-

or other business." 143 S.W.2d at 902. The present case involves a broad commitment to "residential purposes" followed by an equally broad negative prohibition against "any commercial undertaking." According to Ballentine's Law Dictionary (3d. Ed. 1969), the word "commercial" means "[p]ertaining to the purchase and sale or exchange of goods and commodities and connoting as well forms of, and occupations in, business enterprises not involved in trading in merchandise; in a broad sense, embracing every phase of commercial and business activity and intercourse." *Id.* at 222. Thus, while the term mercantile used in *Waller* requires the sale of goods[1], the term commercial used in the present case includes any "business activity." Accordingly, we hold that the "wording of the restriction" is clear and unambiguous and prohibits operation of a beauty salon in the subdivision.

We think it is doubtful that *Waller*'s examination of the nature and extent of the incidental use is applicable to the present case. We understand that in a case where one use is explicitly permitted but the actual use is not exactly within the permitted use, some analysis should be made to determine whether the actual use should be allowed as incidental to the permitted use. We are not convinced, however, that an actual use which is explicitly prohibited will be allowed to continue as incidental to a permitted use. For example, in *Laughlin v. Wagner*, 244 S.W. 475, 478 (Tenn. 1922), a residential restriction resulted in the holding that lots could be used for purposes incidental to residential use, such as flower beds and walkways, but not as driveways to a prohibited business use.

Furthermore, we do not agree that defendants' beauty salon was merely an incidental use. The undisputed facts show that the defendants filed federal tax returns for 2005 and 2006 which included a Schedule C reporting profit from a business. Though much was made of testimony that defendants did not advertise their shop, they listed $2,250 advertising expense for 2005 and $2,667 in 2006 on their schedule C[2]. Further, the trial exhibits include state sales tax reports in 2005 and 2006, and Sullivan County tax reports for 2005, 2006 and 2007 for business license holder "California Cuts." Trial exhibit 1 is a report by the State Board of Barber Examiners on California Cuts. To borrow again from the language in *Carr*, "We think such an undertaking is substantially different from the incidental use of a dwelling for purposes, not strictly residential in character, from which the owner derives some income or profit but which may not, by any fair construction, be termed a business or trade." *Id*. at 903. Defendants were clearly running a business out of their home.

---

[1] Susan Endres stocks and sells beauty products to her customers.

[2] The trial court found that there were no exterior signs on the residence. Susan Endres testified that she does no advertising.

C.

We will now address the trial court's comment that the testimony indicated "the character of the neighborhood has changed." We do so in light of the court's determination that "it is not necessary to rule on this issue." Defendants assert that "[i]f this Court were to reverse the Trial Court on the issue of incidental use, then this Court would have to remand the case to the Trial Court for its determination on the waiver issue." Plaintiffs argue that this Court should either refuse to consider the issue or treat the trial court's comment as an erroneous factual finding. On this point, we must agree with the defendants.

Abandonment of the restrictive covenant was clearly pleaded in paragraph 5 of the answer, and evidence was presented that several other businesses operated in the neighborhood. The trial court's comments indicate that abandonment or waiver was a viable issue in the case, but the court stopped short of a complete analysis upon determining another issue that it saw as dispositive. A complete analysis would have included, at least, further consideration of whether or not the alleged violations rose to the level of "community acquiescence." *Scandlyn v. McDill Columbus Corp.*, 895 S.W.2d 342, 349 (Tenn. Ct. App. 1994). Sporadic violations do not prove community waiver or abandonment. *Id.* The violations must be so pervasive "as to frustrate the object of the scheme with the result that enforcement of the restriction involved would seriously impair the value of the burdened lot without substantially benefiting the adjoining lots." *Id.* Whether there has been a waiver or abandonment of the restriction is a fact question. *Taylor v. Burleson*, 2002 WL 1870269 (Tenn. Ct. App., E.S., filed August 15, 2002). We decline plaintiffs' invitation to decide this fact question before the trial court has that opportunity. *See Zaharias v. Vassis*, 789 S.W.2d 906, 911 (Tenn. Ct. App. 1989) (factual issues should be determined first at trial level). Accordingly, we will remand the case to the trial court for determination of issues that were pretermitted.

IV.

The judgment of the trial court is vacated. Costs on appeal are taxed to the appellees, Gary Endres and Susan Endres. This case is remanded to the trial court, pursuant to applicable law, for further proceedings consistent with this opinion.

_____
CHARLES D. SUSANO, JR., JUDGE

-9-