Joe H. PARKS et ux., Plaintiffs-Appellants,

v.

Don RICHARDSON et al., Defendants-Appellees.

Court of Appeals of Tennessee, Middle Section.

August 26, 1977.

Certiorari Denied by Supreme Court Nov. 7, 1977.

Edward C. Blank, II, N. Houston Parks, MacFarland, Colley, Blank & Jack, Columbia, for plaintiffs-appellants.

T. Edward Lawwell, Shelton, Lawwell & DuBois, Columbia, for defendants-appellees.

## OPINION

DROWOTA, Judge.

This appeal presents the question of whether or not a covenant restricting the use of real property to residential purposes only prohibits the construction of multi-unit residential structures such as apartment buildings.

Plaintiffs Joe and Cloa Parks, husband and wife, are the son and daughter-in-law of Norman Parks, former owner of a large tract of land in Maury County. On August 16, 1955, Norman Parks deeded to Allen H. Fraser a part of this tract, which soon became the Andrew Jackson Heights Subdivision. This deed contained the following covenant:

> For the above stated consideration, the grantor further covenants and binds himself, his heirs, representatives and assigns, that the remainder of the property which he owns lying to the south of the above described roadway and between

the First Tract and the highway and also that portion of his property lying to the north of said roadway, between the First Tract and the highway and for a distance of 140 feet north of the center of said roadway easement, this property is hereby restricted for residential purposes only and for residential property which has been approved by the Columbia Planning Commission, except that within the 140 foot strip north of the road the grantor shall be permitted to construct a 50 foot street or road.

A plat of Jackson Heights Subdivision was recorded by Fraser on September 16, 1955. Among the covenants included in the plat was one restricting each lot to use for one or two family residences only, and another prohibiting apartment houses and "other commercial" buildings.

Plaintiffs took title to the two tracts of land in controversy here by two deeds from Norman Parks, one dated August 1, 1956, the other dated October 3, 1973. These two tracts fall within the description of land "remaining" to Norman Parks under the covenant in his deed to Fraser, and so are restricted to "residential purposes only" by that covenant. They are also noted on the Jackson Heights Subdivision plat as "restricted future residential."

The present controversy arose when plaintiffs became desirous of constructing "multi-unit residential buildings" on their restricted property. Before proceeding with their plan, they brought this action for declaratory relief in the Chancery Court for Maury County, asking the court to determine whether the proposed construction would constitute a breach of the covenant. The suit was brought against the class of "all present owners of real property in the Andrew Jackson Heights Subdivision," and defendant Richardson was made the named representative of the class. After approving the suit as a class action, the Chancellor held a hearing at which he accepted into evidence several agreed exhibits and some brief testimony from a property owner in the subdivision.

The evidence submitted in the case consists entirely of the deed from Norman Parks to Fraser, the plat of Andrew Jackson Heights Subdivision, copies of the two deeds from Norman Parks to plaintiffs, and the testimony of Mrs. Carolyn Murray Outlaw. Mrs. Outlaw's testimony was that she purchased a lot in the subdivision on March 31, 1956. She stated that she had seen the restriction of "future residential" noted on the subdivision plat with respect to the property in question here, and that she had been "under the impression" that this restriction was the same as the one or two family use restriction imposed on lots in the subdivision. She also had the impression that the restriction was intended to protect subdivision residents from having to enter the subdivision through a proposed shopping center. Mrs. Outlaw said she relied on these impressions in purchasing her lot. She further said that, while she bought her lot from Fraser and spoke primarily with him, she knew that Norman Parks knew of her conversations with Fraser and that he may have been present on at least one occasion.

Based on the foregoing, the Chancellor's decision was that plaintiffs' suit should be dismissed. He reasoned that modern apartment buildings are more in the nature of businesses than residences and that Norman Parks, who knew the character of the subdivision Fraser was about to establish, could not have intended the covenant to allow construction of an apartment house. He therefore decided that construction of such a building would constitute a breach of the restrictive covenant and entered a decree dismissing the suit. Plaintiffs appeal, assigning as error the Chancellor's conclusion that the covenant prohibits construction of apartment buildings and his failure to declare explicitly whether other types of multi-unit housing, such as duplexes or condominiums, would be permitted.

Plaintiffs correctly point to a couple of well established rules of law and construction which dictate the approach that must be taken in this case. The first is that a restrictive covenant will be given a

fair and reasonable meaning according to the intent of the parties, which may be determined with reference both to the language of the covenant and to the circumstances surrounding its making. *White v. Gulf Refining Co.,* 156 Tenn. 474, 2 S.W.2d 414 (1928); *Waller v. Thomas,* 545 S.W.2d 745 (Tenn.App.1976); *Hamilton v. Broyles,* 57 Tenn.App. 116, 415 S.W.2d 352 (1966). The second is that a restrictive covenant, being in derogation of the free use and enjoyment of property, will be strictly construed against the restriction and in favor of the reasonable use of the property, so that only uses clearly prohibited will be held precluded by such a covenant. *Shea v. Sargent,* 499 S.W.2d 871 (Tenn.1973); *Lowe v. Wilson,* 194 Tenn. 267, 250 S.W.2d 366 (1952). Thus, any ambiguity in the terms of the covenant or intent of the parties will be resolved against the restriction. *Shea v. Sargent, supra*; *Waller v. Thomas, supra.* We point out in particular that this is the applicable rule of construction, rather than the rule that ambiguous contract provisions are construed against the party who wrote them, a rule that defendants contend should be applied here. The latter is a valid rule of construction applied in contract cases in Tennessee. See *e. g., Hanover Insurance Co. v. Haney,* 221 Tenn. 148, 425 S.W.2d 590 (1968) (insurance policy). In cases involving covenants restricting the use of real property, however, the rule of strict construction against the restriction is well established as the one to be applied.

■ The first question, then, is whether there is any clear evidence of the specific meaning intended by the parties in the use of the words "for residential purposes only." The words themselves, of course, are the primary evidence of meaning. Beyond that, the only such evidence is the circumstantial probability that Norman Parks knew what kind of subdivision Fraser had in mind when the covenant was made, and the testimony of a purchaser of property in the subdivision that her impression was that the restrictions imposed on plaintiffs' property were the same as those imposed on the subdivision. Despite defendants' argument to the contrary, we think

that this evidence is wholly inadequate to displace the "plain meaning" of the words used and to establish that those words were specifically intended to impose on the property now owned by plaintiffs the same restriction to one or two family use that was soon afterward imposed on the subdivision lots.

■ The next question is, in the absence of a clear showing of the intent of the parties to the covenant, what "plain meaning" is to be legally attributed to its words. Defendants contend, and the Chancellor held, that modern apartment buildings are primarily commercial in character and so are not within the meaning of "residential." Here we are assisted by the rule requiring us to construe any ambiguity against the restriction, as well as by case law from other jurisdictions which have already decided the point. Nearly all of the cases considering the point have held that, without more, a covenant restricting property to "residential" use does *not* prohibit construction of multi-unit residential buildings such as apartments, condominiums, and duplexes. *Walker v. Gross,* 362 Mass. 703, 290 N.E.2d 543 (1972); *Shepherd v. State,* 427 S.W.2d 382 (Mo.1968); see Annot., 14 A.L. R.2d 1376, § 9 (1950) (collecting the cases in point). Some cases, while in accord with this general view, hold that a different result could obtain if the word "a" or "one" were used to modify the word "residence" in the covenant. *Flowers v. August,* 426 S.W.2d 480 (Ky.1968); *Stephenson v. Perlitz,* 532 S.W.2d 954 (Tex.1976).

An instructive example of the reasoning employed by the courts that hold multi-unit buildings not precluded by a restriction to residential use is afforded by *Walker v. Gross, supra,* in which the court held that a covenant forbidding the use of premises "for any business purpose" did not prohibit construction of an 83-unit apartment house thereon. As in the present case, evidence of the precise intent of the parties was lacking, and a rule of construction required restrictions in a deed to be construed against the party seeking to enforce them

and in favor of the freedom of the land from servitude. Focusing on the activity to be carried on on the premises, the court reasoned that the apartment building would be *used* by its *occupants* for *residential purposes* only, and that *ownership* of the property for profit did not make the building a business within the meaning of the covenant. The court pointed out that, were the opposite view to be adopted, renting of a single family house would seem to violate the covenant, while outright ownership by many families of a large number of condominiums located in one building would not. The court rejected this approach, asserting that a restriction to residential or nonbusiness use refers to the use actually made of the property by its occupants rather than the existence of any profit for the owner, and held that the restriction did not bar construction of an apartment house.

We agree with *Walker* and the other cases that have held covenants restricting property to residential use not to prohibit multi-unit residential structures. We do not agree, as defendants argue and the Chancellor decided, that *Carr v. Trivett*, 24 Tenn.App. 308, 143 S.W.2d 900 (1940), is analogous to the instant case. There, pursuant to a covenant restricting property to residential use and expressly prohibiting business use, defendants were enjoined from using 4 rooms in their 8-room house as a tourist home. There, the tourists who occupied the house were not using it for residential purposes, but only for the most temporary convenience of shelter in the course of a brief stay in the area. The occupants, other than the owners, were transients who could not be said to "reside" in the house in the sense that those who rent apartments reside in them. Further, due to the magnitude of the boarding house operation, as the court rightly pointed out, this use of the house was not "incidental to the occupancy of the premises as a dwelling . . . ." 24 Tenn. App. at 313, 143 S.W.2d 903. In the instant case, on the other hand, the restriction is sought to be applied to preclude the occupancy of the property on a much more permanent basis as dwellings by tenants or owners of condominiums, a use

undeniably "residential" in character. We decline so to apply it.

■ In addition to their contentions that restriction to one or two family use is mandated by the intent of the parties and by the words of the covenant themselves, defendants argue that that result should be reached by an application of T.C.A. § 67–601(9). That section defines "residential property," for purposes of tax assessment, as "real property . . . used, or held for use, for dwelling purposes and which contains not more than one rental unit." We do not think that this definition has any application in the context of a private restrictive covenant. Section 67–601(9) was enacted as part of a scheme of property taxation, in which a primary concern is an allocation of the tax burden according to the income derived from property and its worth to the owner. This business aspect, emphasized by the tax law, is undeniably a part of residential rental property. But when a private restrictive covenant rather than tax law is in question, it is not the aspect to be looked to. Rather, as we have already explained, the use made of the property by its occupants is there the crucial criterion, and use by apartment and condominium dwellers must be classified as "residential."

In sum, we hold that a private covenant restricting property to "residential" use only does not, of itself, prevent construction of multi-unit residential buildings. We do not think that the use of the word "purposes" rather than "use" after "residential" in the instant covenant should affect the reasoning we have advanced in support of this result. Of course, clear indication of a different intent by the parties to the covenant, or perhaps establishment of a common scheme of development or other unusual circumstances, might require a different result in another case. But there is no evidence of any of these elements in the instant case.

The Chancellor evidently based his decision mainly on the theory that multi-unit residential buildings today are more in the

nature of "business" than "residence" and so are excluded from the term "residential" under the covenant, and secondarily on a finding that prohibition of such a use was the intent of the parties to the covenant. The latter finding is not supported by the preponderance of the evidence and cannot be sustained. The former point is really a question of law controlled by the rule of strict construction against the restriction. Since there is no other evidence to alter its meaning in the instant case, the legal definition of the word "residential" in this context, as we have explained it, is controlling. Accordingly, and pursuant to plaintiffs' request for specific declaration of their rights and duties under the covenant, we will proceed to construe the covenant as follows:

(1) The plaintiffs' property is limited to use for residential, as opposed to commercial or other purposes. The word "residential" refers to the use made of the property by its occupants, and does not preclude the construction and rental of duplexes, apartment houses, or condominiums. Any use in the nature of a hotel, motel or boarding house, however, is prohibited.

(2) By its terms, the covenant also limits plaintiffs' property to "residential property which has been approved by the Columbia Planning Commission," so that express approval of that body is required even for uses falling within the definition of "residential."

(3) This opinion in no way affects the covenant's express allowance of construction of a 50 foot street in the "140 foot strip north of the road."

The decree below must be reversed and the costs of this appeal taxed to appellees.

Reversed.

SHRIVER, P. J., and TODD, J., concur.