IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 16, 2005 Session

## SHIELDS MOUNTAIN PROPERTY OWNERS ASSOCIATION, INC., ET AL. v. MARION A. TEFFETELLER, ET AL.

**Appeal from the Chancery Court for Sevier County**
**No. 03-7-407      Telford E. Forgety, Jr., Chancellor**

_____

**No. E2005-00871-COA-R3-CV - FILED FEBRUARY 22, 2006**

_____

Shields Mountain Property Owners Association, Inc., James R. Hall, and Terri L. Hall ("Plaintiffs")
sued Marion A. Teffeteller and Charlene A. Teffeteller ("Defendants") seeking, among other things,
to enforce restrictive covenants and enjoin Defendants from renting their property in Shields
Mountain Estates for overnight vacation purposes.  The Trial Court found and held, *inter alia*, that
the covenants and restrictions at issue are applicable to the lots within Shields Mountain Estates
including Defendants' lots; that Defendants' use of their lots for vacation rentals is a violation of the
covenants and restrictions; and that Defendants are permanently enjoined from using property they
own in Shields Mountain Estates for vacation rentals.  Defendants appeal to this Court.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and
SHARON G. LEE, J., joined.

Barbara J. Muhlbeier and Erica Taylor Greene, Knoxville, Tennessee for the Appellants, Marion A.
Teffeteller and Charlene A. Teffeteller.

Brian T. Mansfield, Sevierville, Tennessee for the Appellees, Shields Mountain Property Owners
Association, Inc., a Tennessee nonprofit corporation and James R. Hall and wife, Terri L. Hall.

# OPINION

## Background

Defendants own two lots in Shields Mountain Estates. One of these lots contains a house that Defendants have used as vacation rental property since their purchase of it. The other lot is vacant. Plaintiffs sued Defendants claiming that Defendants were violating two restrictive covenants that apply to Shields Mountain Estates properties, including Defendants' lots. The restrictive covenants Plaintiffs sought to enforce state:

> 1) No lot at Shields Mountain Estates may be utilized for any commercial or industrial purpose or for any commercial husbandry or agricultural activity. This shall not prohibit the maintenance of a household garden or household pets.
>
> * * *
>
> 7) All lots shall be used for residential purposes exclusively. No structure except as hereinafter provided shall be erected, altered, placed or permitted to remain on any lot other than one (1) detached single family dwelling and one-story accessory building which may include a detached private garage and/or servants quarters, provided the use of such dwelling or accessory building does not include any business activity. Such accessory building may not be constructed prior to the construction of the main dwelling, and shall conform substantially with the style and exterior finish of the main dwelling (minimum living area 750 square feet).

("Restrictive Covenant 1" or "Restrictive Covenant 7" as appropriate).

The bench trial was in March of 2005. Defendant Charlene Teffeteller testified that she and her husband own Great Smoky Mountain Cabin Rentals, a business that manages chalets and cabins for vacation rentals. Defendants own five of the properties they offer as vacation rentals and manage a total of twenty-seven properties. Ms. Teffeteller testified that Great Smoky Mountain Cabin Rentals has an office at 120 Joy Street in Sevierville and that guests using their rental properties, including the one in Shields Mountain Estates, must check in at this location. Ms. Teffeteller testified that the price for their rentals ranges from $99 to $175 per night with a two night minimum stay. Ms. Teffeteller testified that they advertise their rental properties on a website.

Ms. Teffeteller admitted that the lots she and her husband own are a part of Shields Mountain Estates. She testified that she acquired a copy of the restrictions from the courthouse when she and her husband purchased the Shields Mountain Estates property. Ms. Teffeteller admitted that these restrictions are referred to in her deed. Ms. Teffeteller testified that prior to purchasing the Shields Mountain Estates property, she sought a legal opinion about whether the restrictions would apply to using the property for vacation rentals. She further testified that she obtained title insurance

on the Shields Mountain Estates property. Ms. Teffeteller testified that her title policy issued by Chicago Title has a rider insuring that the use of the Shields Mountain Estates property for vacation rentals would be acceptable. Ms. Teffeteller testified that she and her husband plan to construct a house to be used for vacation rentals on their vacant lot in Shields Mountain Estates. Ms. Teffeteller explained that Great Smoky Mountain Cabin Rentals provides maid service only at the conclusion of a renter's stay, but she admitted that the renter's use of their house in Shields Mountain Estates is essentially the same as a vacationer would use a motel.

James R. Hall testified on behalf of Plaintiffs. Mr. Hall owns a house in Shields Mountain Estates. In addition, Mr. Hall served as an officer or director on the Shields Mountain Property Owners Association Board from 1996 until he recently resigned for health reasons. Mr. Hall testified that he purchased his house in Shields Mountain Estates in 1989, but did not move in full-time until 1995.

Mr. Hall testified that Plaintiffs discovered that Defendants were using their property for vacation rentals when some of the Shields Mountain Estates' residents complained about a large party being held at Defendants' house. Mr. Hall testified that when some Shields Mountain Estates' residents went to Defendants' house to complain, they were told that the people who were partying had rented the house for the weekend. Mr. Hall testified that after he was notified of this use, he contacted his attorney and a letter was sent to Defendants. Mr. Hall also testified that he discovered workmen doing some excavation on Defendants' vacant lot, and he was told when he investigated that the workmen were building another vacation rental property. Mr. Hall testified that he told the workmen that they had to stop, and they did.

Mr. Hall testified that to his knowledge, other than Defendants, no one ever has used property in Shields Mountain Estates for vacation rentals. Mr. Hall admitted that for some time after he purchased his home, he lived in it only part-time because he still had a home in another state. He further admitted that owners who allow their children to vacation on their Shields Mountain Estates property are not in violation of the restrictive covenants.

The parties entered into several stipulations of fact at trial. Plaintiffs stipulated that Paul and Sharon Bunch own a home in Shields Mountain Estates that they have rented twice with each renter staying for a period of more than one year. Plaintiffs further stipulated that when the Bunchs are not renting their home, they use it as a vacation home for short stays. Plaintiffs stipulated that they do not believe these uses by the Bunchs of their property violate the restrictive covenants. In addition, Plaintiffs stipulated that Ted and Margaret Peltier own a home in Shields Mountain Estates, that the Peltiers have used this home as a vacation home for short stays, and that the Peltiers also have allowed their children to use the home for short visits when the Peltiers are not present. Plaintiffs stipulated that they do not believe these uses by the Peltiers of their property violate the restrictive covenants.

The Trial Court entered its Final Order on March 28, 2005, incorporating the Trial Court's memorandum opinion. The Final Order found and held, *inter alia*, that the covenants and

restrictions at issue are applicable to the lots within Shields Mountain Estates including Defendants' lots; that Defendants' use of their lots for vacation rentals is a violation of the covenants and restrictions; and that Defendants are permanently enjoined from using their property in Shields Mountain Estates for vacation rentals.

Defendants appeal to this Court.

## Discussion

Although not stated exactly as such, Defendants raise one issue on appeal: whether the Trial Court erred in holding that Restrictive Covenants 1 and 7 preclude Defendants from renting their property on a short-term vacation rental basis.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

As this Court noted in *Jones v. Haynes*:

Tennessee has long-standing rules regarding restrictive covenants. Under Tennessee law restrictive covenants are valid but are disfavored because they act as an impediment to the free use and enjoyment of land. "Therefore, restrictive covenants are to be strictly construed and will not be extended by implication and any ambiguity in the restriction will be resolved against the restriction." *Waller v. Thomas*, 545 S.W.2d 745 (Tenn. App. 1976).

*Jones v. Haynes*, No. 03A01-9707-CH-00241, 1998 Tenn. App. LEXIS 399, at *6 (Tenn. Ct. App. June 24, 1998), *no appl. perm. appeal filed*. "[A] restrictive covenant will be given a fair and reasonable meaning according to the intent of the parties, which may be determined with reference both to the language of the covenant and to the circumstances surrounding its making." *Parks v. Richardson*, 567 S.W.2d 465, 467-68 (Tenn. Ct. App. 1977).

We first consider whether Restrictive Covenant 1 precludes Defendants from renting their property on a short-term vacation rental basis. Restrictive Covenant 1 provides:

1)   No lot at Shields Mountain Estates may be utilized for any commercial or industrial purpose or for any commercial husbandry or agricultural activity. This shall not prohibit the maintenance of a household garden or household pets.

Arguably, Defendants' use of their property for vacation rentals constitutes a commercial use. However, the Bunchs' use of their property as a long-term rental just as arguably,

and for the same reasons, could constitute a commercial use. By stipulating that the Bunchs' use of their property as rental property is not a violation of the restrictive covenants, which necessarily means that the Bunchs' property is not being utilized for a commercial purpose, Plaintiffs have waived the possible application of this covenant to Defendants' use of their property as a rental property. Stated another way, if the Bunchs' rental of their property does not constitute utilizing their property for a commercial purpose, and such was the stipulation by Plaintiffs, we fail to see how Defendants' rental of their property can be classified any differently than the Bunchs'. As to Restrictive Covenant 1, the length of the rental period is not relevant without improperly extending by implication Restrictive Covenant 1, and such an extension by implication would be improper. *See Jones*, 1998 Tenn. App. LEXIS 399, at *6.

We next consider whether Restrictive Covenant 7 precludes Defendants from renting their property on a short-term vacation rental basis. Restrictive Covenant 7 provides:

> 7) All lots shall be used for residential purposes exclusively. No structure except as hereinafter provided shall be erected, altered, placed or permitted to remain on any lot other than one (1) detached single family dwelling and one-story accessory building which may include a detached private garage and/or servants quarters, provided the use of such dwelling or accessory building does not include any business activity. Such accessory building may not be constructed prior to the construction of the main dwelling, and shall conform substantially with the style and exterior finish of the main dwelling (minimum living area 750 square feet).

Defendants argue, in part, that Restrictive Covenant 7 does not expressly prohibit short-term rentals. We agree, but only to a limited extent. Restrictive Covenant 7 by its terms does not prohibit short-term *residential* rentals.

Plaintiffs stipulated that the Bunchs' use of their property as a long-term rental was not in violation of the restrictive covenants. While Plaintiffs stipulated that the Bunchs had rented their property for periods of over one year, nothing in Restrictive Covenant 7 precludes the Bunchs, or any other Shields Mountain Estates owner, such as Defendants, from renting their property for a shorter period as long as the use of the property is residential.

Defendants argue that their use of the property for vacation rentals constitutes a residential use, and thus, does not violate Restrictive Covenant 7. Defendants cite to this Court's opinion in *Barnett v. Behringer*, which states: "A residential building is a building that is used as a dwelling place or place of habitation." *Barnett v. Behringer*, No. M1999-01421-COA-R3-CV, 2003 Tenn. App. LEXIS 391, at *23 (Tenn. Ct. App. May 27, 2003), *no appl. perm. appeal filed*. Defendants argue that under this definition of residential, "the meaning of the word 'residential' hinges on the activity that takes place (i.e., sleeping) on the property, not the intent to remain for any length of time." Defendants argue that the people who rent from Defendants use the home "for the same purpose: eating, sleeping, relaxing, and bathing," and that it is these activities and not the "relative permanency" of the stay that renders the use residential.

While we agree that the length of the stay by itself is not dispositive of whether a use is residential, we do not agree that Defendants' renters are using the property for a residential purpose. While they may well eat, sleep, relax, and bathe while there, they do not reside there. Instead, as admitted by Ms. Teffeteller, their renters use the property in the same way that people use a motel. Accepting Defendants' argument that use of the property for "eating, sleeping, relaxing, and bathing" makes the use residential would lead to the conclusion that the use of a motel room, or a camper, or a tent during a vacation stay or even staying in a hospital room would constitute a residential use. This conclusion is untenable. Defendants' renters are using the property for "the most temporary convenience of shelter in the course of a brief stay in the area." *Parks*, 567 S.W.2d at 469.

Restrictive Covenant 7 is clear and unambiguous and prohibits the use of lots in Shields Mountain Estates for anything other than residential use. Defendants argue that other Shields Mountain Estates lot owners allow members of their family to use their homes for short-term vacation purposes and, since Plaintiffs stipulated that this use does not violate the restrictive covenants, then the use of Defendants' property by paying short-term vacationers cannot be a violation. The flaw in this argument is that those lot owners who allow family members to use their home as their guest, whether the owner is present or not, are still using their property for residential purposes. It cannot reasonably be argued that allowing a family member or guest to spend some time in the owner's home is anything other than a legitimate residential use by the owner of that house. Defendants' property simply is not being used for a residential purpose by either Defendants or their vacation renters.

Defendants argue that the cases relied upon by the Trial Court, i.e., *Carr v. Trivett*, and *Parks v. Richardson*, are distinguishable from the case at hand. *Carr v. Trivett*, 143 S.W.2d 900 (Tenn. Ct. App. 1940); *Parks v. Richardson*, 567 S.W.2d 465 (Tenn. Ct. App. 1977). Defendants argue that this case differs from *Carr* wherein the tourist home at issue there maintained a guest register on site similar to hotels, had a lighted sign advertising rentals, and solicited guests through cards kept on display at local filling stations. However, Defendants concede that while they may not maintain a guest register on site as hotels do, their customers must check in at their office location. Likewise, while there is no lighted sign advertising rentals and Defendants do not rely upon cards kept on display at local filling stations, Defendants concede that they do advertise their rental properties on their website. Defendants argue that since no business is performed at their Shields Mountain Estates property and no money or keys are exchanged there, this use is different from the use found in *Carr v. Trivet*, upon which the Trial Court relied. Defendants argue it "would be virtually impossible for an observer to tell whether the occupants were staying at the Property for two nights or two years." Defendants point to the fact that no business is conducted on Defendants' property. No money or keys are exchanged on the property and there are no signs or cash registers at Defendants' Shields Mountain Estates property. However, under this line of reasoning, a motel could move its registration desk down the street from the motel rooms and then would be using the property for residential use. Such a result would be contrary to Tennessee law. In *Parks*, the Court held, in part, that "[t]he word 'residential' refers to the use made of the property by its occupants, and does not preclude the construction and rental of duplexes, apartment houses, or condominiums.

Any use in the nature of a hotel, motel or boarding house, however, is prohibited." *Parks*, 567 S.W.2d at 470. Defendants argue that since their property "appears and functions just like all other homes in the neighborhood," Defendants' use of the property is very different from a hotel, motel, or boarding house. However, Ms. Teffeteller admitted that their renter's use of Defendants' Shields Mountain Estates house is essentially the same as a vacationer would use a motel. We find Defendants' argument unpersuasive.

Defendants urge this Court to consider the cases of *Jones v. Haynes*, and *Yogman v. Parrott*, rather than the cases that the Trial Court relied upon. *Jones v. Haynes*, No. 03A01-9707-CH-00241, 1998 Tenn. App. LEXIS 399 (Tenn. Ct. App. June 24, 1998), *no appl. perm. appeal filed*; *Yogman v. Parrott*, 937 P.2d 1019 (Or. 1997). The *Jones* case, however, dealt with restrictions completely different from the restrictions now before us. *Jones*, 1998 Tenn. App. LEXIS 399, at *3 (dealing with a restrictive covenant providing that "[n]o shop, store, factory, saloon or business of any kind or nature whatsoever shall be erected, suffered or licensed to exist on any of the lots ...."). In addition, the *Jones* Court found the restriction in that case to be ambiguous while we have found Restrictive Covenant 7 to be unambiguous. *Id*. at **7-10. For these reasons, *Jones v. Haynes* is inapplicable. The *Yogman* case that Defendants urge us to consider is an Oregon case. As Tennessee case law relevant to the issues involved in this case exists, we find it unnecessary to resort to Oregon case law.

We hold that Defendants' use of their lots as vacation rentals is a violation of Restrictive Covenant 7. As such, we affirm the Trial Court's Final Order entered on March 28, 2005.

### Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellants, Marion A. Teffeteller and Charlene A. Teffeteller, and their surety.

_____
D. MICHAEL SWINEY, JUDGE