# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### February 3, 2022 Session

## PRATIK PANDHARIPANDE, M.D. v. FSD CORPORATION

**Appeal from the Chancery Court for DeKalb County**
**No. 2019-CV-60     Jonathan L. Young, Judge**

———————————————————

### No. M2020-01174-COA-R3-CV

———————————————————

This is a dispute between a property owner and his homeowners' association concerning the scope and applicability of restrictive covenants. Two restrictive covenants are at issue. One is a covenant contained in the neighborhood's 1984 Declaration of Covenants, Conditions, and Restrictions that limited usage of the homes to residential use as "a residence by a single family." The other is a covenant contained in a 2018 Amendment that relaxed the 1984 residential use restriction by authorizing short-term rentals of no less than 30 consecutive days, subject to specific criteria. The plaintiff, who purchased a home in the development in 2015 and has been leasing it on a short-term vacation rental basis to third parties as a business venture, seeks a declaratory judgment that he may lease his home for rentals as short as two days. For its part, the homeowners' association seeks to enforce the restrictive covenants in the 1984 Declaration as well as the 2018 Amendment. The trial court granted summary judgment in favor of the homeowners' association on both issues. In doing so, the court held that restrictions in the 1984 Declaration prohibited non-residential renting. The court also held that Plaintiff's current use of his property is subject to the 2018 Amendment, which authorized short-term leasing subject to stipulations including that "[t]he length of the lease must be for a minimum of 30 consecutive days." The plaintiff appeals. We affirm.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and ARNOLD B. GOLDIN, JJ., joined.

Ben M. Rose, Brentwood, Tennessee, for the appellant, Pratik Pandharipande, M.D.

Gerald C. Wigger and Emmie Kinnard, Nashville, Tennessee, for the appellee, FSD Corporation.

## OPINION

### FACTS AND PROCEDURAL HISTORY

On March 29, 1984, FSD Corporation ("FSD"), the owner of a development known as the Four Seasons Development ("Four Seasons"), which overlooks Center Hill Lake in DeKalb County, Tennessee, duly recorded a Declaration of Covenants, Conditions, and Restrictions (the "1984 Declaration") with the Register of Deeds for Dekalb County, Tennessee, in Deed Book A6, Page 893.[1] The introductory portion of the preamble reads in pertinent part:

DECLARATION OF COVENANTS,
CONDITIONS, AND RESTRICTIONS

This Declaration of Covenants, Conditions, and Restrictions is made this 8th day of March, 1984, by FSD Corporation, a Tennessee corporation (hereinafter referred to as "Corporation");

W I T N E S S E T H:

WHEREAS, Corporation is the owner of the real property described in Exhibit "A" attached hereto and incorporated herein by reference. Corporation intends by this Declaration to impose upon the Properties, as defined hereinafter, mutually beneficial restrictions under a general plan of improvement for the benefit of all owners of residential property within Four Seasons development, a subdivision of recreational lots, common areas and improvements thereto located in DeKalb County, Tennessee and made subject to this Declaration by the recording of this Declaration. Corporation desires to provide a flexible and reasonable procedure for the overall development of the Properties, as defined hereinafter, and to establish a

---

[1] The land which comprises Four Seasons was previously owned by Four Seasons of Tennessee, Inc., which, in 1967, recorded certain restrictive covenants (the "1967 Declaration") with the DeKalb County Register of Deeds. Land Contract Acceptance Corporation subsequently acquired the development and, in May 1974, recorded amendments to the 1967 Declaration (the "1974 Amendments"). The 1974 Amendments provided for the same restrictions as those contained in the 1967 Declaration. Nevertheless, as Plaintiff states in his brief, "At the time [Plaintiff] purchased the Property the only applicable covenants, if any, . . . were the 1984 [Declaration]," a legal conclusion with which we and FSD agree. This conclusion is consistent with the preamble to FSD's 1984 Declaration, which states in pertinent part: "Corporation acknowledges that the Properties that are to be subjected to this Declaration have previously been made subject to certain Restrictive Covenants of Four Seasons of Tennessee of record in . . . [the] Register's Office for DeKalb County, Tennessee, as modified by that Waiver of Restrictive Covenant [also] of record . . . , said Restrictive Covenants being only acknowledged hereby and expressly not extended, renewed, or incorporated herein by reference[.]" Thus, neither the 1967 Declaration nor the 1974 Amendments have any bearing on Plaintiff's property or the matters at issue in this appeal.

method for the administration, maintenance, preservation, use and enjoyment of such Properties as are now or may hereafter be subjected to this Declaration;

WHEREAS, Corporation desires that the real property described in Exhibit "A" be held, sold and conveyed subject to the provisions of this Declaration;

.   .   .

NOW, THEREFORE, Corporation hereby declares that all of the Properties described in Exhibit "A" and any additional property as may by Subsequent Amendment be added and subjected to this Declaration shall be held, sold, and conveyed subject to the following easements, restrictions, covenants, and conditions. Such easements, restrictions, covenants and conditions are for the purpose of protecting the value and desirability of the Properties and shall run with all real property subjected to this Declaration. They shall be binding on the Corporation and all other parties having any right, title, or interest in the described Properties or any part thereof, their heirs, successors, and assigns and shall inure to the benefit of each owner thereof.

Furthermore, Article XII, Section 1 states, in pertinent part:

(a) . . . Except as otherwise provided in this Declaration, *each Lot shall be used for residential and no other purposes.* There shall not be constructed or maintained upon any Lot [any] duplex or multi-unit structure. Except as otherwise provided in [this] Declaration, the Common Area shall be used for recreational, [illegible], other purposes directly related to the single-family use [of] the lots authorized hereunder.

.   .   .

(j) . . . *no gainful profession, occupation, trade or other nonresidential use shall be conducted in any Lot* or upon the Common Area of any portion thereof, provided that this restriction shall not prohibit consultations, conferences, or the transaction of business by telephone or other electronic devices.

(Emphasis added).

The 1984 Declaration also provided that each owner of a lot within Four Seasons would be a "stockholder" in FSD, that the 1984 Declaration could be amended only by a

majority vote of the stockholders, and that any amendments would be effective when recorded with the DeKalb County Register of Deeds Office.[2]

In November 2015, Dr. Pratik Pandharipande ("Plaintiff") purchased an improved lot with a cabin/house thereon within Four Seasons ("the Property"). He acquired the Property by warranty deed subject to the covenants, conditions, and restrictions set forth in the 1984 Declaration.

It is undisputed that Plaintiff purchased the Property with the intent of leasing it for short-term vacation rentals to third parties as a business venture and that he has utilized the Property in such a fashion since its purchase. Shortly after acquiring the Property and acting in furtherance of his business plan, Plaintiff retained a property management company, Center Hill Chalets, to market the Property for short-term vacation rentals. Since its inception, Center Hill Chalets has advertised the Property on as many as 25 different vacation rental websites for lease on a short-term basis, requiring a minimum two-night stay and a maximum 28-night stay for each rental.

In 2018, the 1984 Declaration was amended by a majority vote of the stockholders (the "2018 Amendment") to authorize short-term rentals of no less than 30 days subject to specific criteria.[3] The 2018 Amendment provided, in pertinent part:

> Leasing homes owned by FSDC shareholders shall be allowed with the following stipulations:
>
> i.  The length of the lease must be for a minimum of 30 consecutive days.

A few months after the 2018 Amendment was duly recorded, counsel for FSD notified Plaintiff that the means by which he was renting his property was in violation of Four Seasons' restrictive covenants. Plaintiff responded by filing a Verified Complaint against FSD, seeking a declaratory judgment pursuant to Tennessee Code Annotated §§ 29-14-101 to -113 and injunctive relief. He contended, *inter alia*, that the 2018 Amendment could not apply to him because he acquired the Property in 2015, approximately three years before the 2018 Amendment went into effect. FSD responded by filing an Answer and Counterclaim, seeking to enforce the restrictive covenants. In doing so, FSD rejected

---

[2] Article I, Section 15 and Article III, Section 1 of the 1984 Declaration defined "Stockholders" as those record owners of lots subject to the Declaration who were issued one share of stock in the corporation for each lot owned. Article 1, Section 7 defined "Lot" as "a portion or portions of the Properties made subject to the terms and conditions of this Declaration and intended for any type of independent ownership for construction and use as a residence by a single family."

[3] As provided in the 1984 Declaration, the 2018 Amendment became effective on July 24, 2018, when it was duly recorded with the Office of the Register of Deeds for DeKalb County, Tennessee.

Plaintiff's claim that the 2018 Amendment could not apply and asserted that, even if the 2018 Amendment was not applicable, the 1984 Declaration prohibited Plaintiff from leasing the Property as a short-term vacation rental.

On October 28, 2019, Plaintiff moved for summary judgment. In doing so, Plaintiff contended that the 1984 Declaration did not prohibit short-term vacation rentals. He also contended that the 2018 Amendment could not be applied retroactively. Alternatively, Plaintiff argued that if the 2018 Amendment did apply, he was entitled to summary judgment based on a grandfathering provision contained in the 2018 Amendment.[4]

Following a hearing on the motion for summary judgment, the trial court denied Plaintiff's motion. Shortly thereafter, FSD filed its own motion for summary judgment, which the trial court granted. In making its determination, the trial court found:

> [T]he plain language contained in FSD's 1984 [Amendments] . . . prohibited [Plaintiff] from using his property for short term renting or leasing. This Court is required to read the restrictive covenant as a contract. This Court finds that as a matter of law, *Shields Mountain Property Owners Ass'n v. Teffeteller*, No. E2005-00871-COA-R3-CV, 2006 WL 408050 (Tenn. Ct. App. Feb. 22, 2006), a Tennessee Court of Appeals case which discusses language identical to this matter, demonstrates that the plain language contained in FSD's 1984 [Amendments] prohibited [Plaintiff] from short term leasing his property.

> .    .    .

> Second, this Court finds that [Plaintiff] is in violation of the 2018 Amendment by short term renting/leasing his property for less than thirty (30) days at one time. The plain language of the 2018 Amendment bars [Plaintiff] from leasing his property for less than thirty (30) days.

> .    .    .

> Therefore, the 2018 Amendment to the Declaration of Covenants, Conditions and Restrictions bars [Plaintiff] from short term leasing his property for less than thirty (30) days.

This appeal followed.

---

[4] For the purpose of summary judgment, Plaintiff stipulated "to [his] knowledge of both the potential for amendment to the restrictive covenants and the amendment at issue."

ISSUES

Plaintiff and FSD each present two issues for our review. We have determined that the issues presented by FSD provide a better means of achieving a reasoned analysis.[5] Thus, we shall analyze the issues presented by FSD, which are:

I.      Did the trial court correctly rule that FSD Corporation's 1984 Declaration of Covenants, Conditions, and Restrictions prohibited [Plaintiff] from short-term renting his property?

II.     Did the trial court correctly rule that the 2018 Amendment prohibits [Plaintiff] from leasing his property for less than 30 days?

## STANDARD OF REVIEW

The propriety of a trial court's summary judgment decision presents a question of law, which we review de novo with no presumption of correctness. *Kershaw v. Levy*, 583 S.W.3d 544, 547 (Tenn. 2019). Accordingly, we must make a fresh determination of whether the requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Hunter v. Brown*, 955 S.W.2d 49, 50 (Tenn. 1997).

A trial court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. "The moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008). As our Supreme Court explained in *Rye v. Women's Care Center of Memphis, MPLLC*:

> [W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense.

477 S.W.3d at 264. However, "if the moving party bears the burden of proof on the challenged claim at trial, that party must produce at the summary judgment stage evidence

---

[5] Almost 80 years ago, Justice Felix Frankfurter observed that "[i]n law . . . the right answer usually depends on putting the right question." *Rogers' Est. v. Helvering*, 320 U.S. 410, 413 (1943). "Thus, a properly framed issue may be the most important part of an appellate brief." *Hodge v. Craig*, 382 S.W.3d 325, 334 (Tenn. 2012).

that, if uncontroverted at trial, would entitle it to a directed verdict." *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 888 (Tenn. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986)).

When a party files a properly supported motion for summary judgment pursuant to Rule 56, "to survive summary judgment, the nonmoving party 'may not rest upon the mere allegations or denials of [its] pleading,' but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, 'set forth specific facts . . . showing that there is a genuine issue for trial.'" *Rye*, 477 S.W.3d at 265 (alteration in original) (quoting Tenn. R. Civ. P. 56.06). "Whether the nonmoving party is a plaintiff or a defendant—and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense—at the summary judgment stage, '[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'"[6] *TWB Architects*, 578 S.W.3d at 889 (alteration in original) (quoting *Rye*, 477 S.W.3d at 265).

In reviewing a trial court's summary judgment decision, we accept the evidence presented by the nonmoving party as true; allow all reasonable inferences in his favor; and "resolve any doubts about the existence of a genuine issue of material fact in favor of" the party opposing summary judgment. *Id.* at 887.

**ANALYSIS**

At issue in this appeal are the restrictive covenants set forth in the 1984 Declaration and in the 2018 Amendment, and the material facts are not in dispute.

This court has consistently recognized that Tennessee disfavors restrictive covenants "because they act as an impediment to the free use and enjoyment of land." *Jones v. Haynes*, No. 03A01-9707-CH-00241, 1998 WL 331311, at *2 (Tenn. Ct. App. June 24, 1998). For this reason, even valid restrictive covenants will "be strictly construed and will not be extended by implication and any ambiguity in the restriction will be resolved against the restriction." *Waller v. Thomas*, 545 S.W.2d 745, 747 (Tenn. Ct. App. 1976) (citations omitted). Nevertheless, if they are properly promulgated and duly recorded, covenants and restrictions contained in a declaration may be recognized as legally valid, and if so, they are binding on all purchasers with notice. *See Ridley v. Haiman*, 47 S.W.2d 750, 753 (Tenn. 1932); *Laughlin v. Wagner*, 244 S.W. 475, 476–77 (Tenn. 1922).

"The construction of restrictive covenants, like other written contracts, is a question of law." *Bernier v. Morrow*, No. M2012-01984-COA-R3-CV, 2013 WL 1804072, at *4

---

[6] As the Supreme Court explained in *TWB Architects, Inc. v. Braxton, LLC*, "[t]his is the standard Tennessee courts must apply when ruling on summary judgment motions regardless of which party bears the burden of proof at trial." 578 S.W.3d at 889.

(Tenn. Ct. App. April 26, 2013) (quoting *Massey v. R.W. Graf, Inc.*, 277 S.W.3d 902, 908 (Tenn. Ct. App. 2008)). In interpreting the language of a restrictive covenant, a court should give "fair and reasonable meaning according to the intent of the parties, which may be determined with reference both to the language of the covenant and to the circumstances surrounding its making." *Parks v. Richardson*, 567 S.W.2d 465, 467–68 (Tenn. Ct. App. 1977) (citations omitted).

## I. THE 1984 DECLARATION

On March 29, 1984, FSD duly recorded the 1984 Declaration of Covenants, Conditions, and Restrictions with the Register of Deeds for Dekalb County, Tennessee, in Deed Book A6, Page 893. In pertinent part, the 1984 Declaration states:

> [The Properties] subjected to this Declaration shall be held, sold, and conveyed subject to the following easements, restrictions, covenants, and conditions. Such easements, restrictions, covenants and conditions are for the purpose of protecting the value and desirability of the Properties and shall run with all real property subjected to this Declaration. They shall be binding on the Corporation and all other parties having any right, title, or interest in the described Properties or any part thereof, their heirs, successors, and assigns . . . .

Further, Article XIII, Section 1 of the 1984 Declaration states that the Declaration would automatically extend for successive ten-year periods unless the majority of the FSD owners signed an instrument terminating the Declaration. There have been no filings to terminate the 1984 Declaration. Thus, at the time Plaintiff purchased the Property in 2015, the 1984 Declaration was in effect and subject to any amendments approved by a majority of the stockholders.

Significantly, the 1984 Declaration included mandatory provisions requiring that all lots within the Four Seasons neighborhood be devoted exclusively to residential use. Article 1, Section 7 defined "Lot" as follows: "'Lot' or 'Lots' shall mean a portion or portions of the Properties made subject to the terms and conditions of this Declaration and intended for any type of independent ownership for construction and *use as a residence by a single family*." (Emphasis added). Further, Article XII, Section 1(a), titled "Use Restrictions," stated:

> Except as otherwise provided in this Declaration, *each Lot shall be used for residential and no other purposes*. There shall not be constructed or maintained upon any Lot [any] duplex or multi-unit structure. Except as otherwise provided in [this] Declaration, the Common Area shall be used for recreational, [illegible], and other purposes directly related to the single-family use [of] the Lots authorized hereunder.

(Emphasis added).

Subsection (j) of Article XII also prohibited any "nonresidential use" of the lots. In pertinent part it stated:

> [*N*]*o* gainful profession, occupation, trade or *other nonresidential use shall be conducted in any Lot or upon the Common Area of any portion thereof*, provided that this restriction shall not prohibit consultations, conferences, or the transaction of business by telephone or other electronic devices

(Emphasis added).

As previously discussed, the 1984 Declaration was in effect when Plaintiff purchased the Property in July 2015. Accordingly, the question is whether the 1984 Declaration prohibits Plaintiff's short-term renting of the Property.

For his part, Plaintiff contends the 1984 Declaration contemplated leasing activities, such as short-term rentals, by which FSD stockholders, meaning the owners of lots within Four Seasons, could rent their lots to tenants for the purpose of enjoying the common areas and facilities. Plaintiff also contends, "[a]t a minimum, there is no language specifically prohibiting such arrangements by owners, like [Plaintiff], and certainly nothing that would have prevented FSD from proscribing them if its membership was inclined to do so. Until 2018, it was not."

For its part, FSD contends that, though the 1984 Declaration expressly states that the use of the lots within Four Seasons shall be solely for residential purposes, Plaintiff has never used his property as a residence for himself or his family, only as a business. More specifically, FSD contends that Plaintiff's use of the Property as a short-term vacation rental is in violation of the residential-use-only restriction. In making this argument, FSD principally relies on this court's decision in *Shields Mountain Property Owners Ass'n, Inc. v. Teffeteller*, No. E2005-00871-COA-R3-CV, 2006 WL 408050 (Tenn. Ct. App. Feb. 22, 2006). In *Teffeteller*, we considered whether a restrictive covenant stating that "[a]ll lots shall be used for *residential purposes exclusively*" prohibited a landowner from renting his property on a short-term basis. *Id*. at *1 (emphasis added). Following a thorough analysis, we determined that such language prohibited short-term vacation rentals because, while "the length of the stay by itself is not dispositive of whether a use is residential," the landowner's renters were "using the property for 'the most temporary convenience of shelter in the course of a brief stay in the area.'" *Id*. at *4 (quoting *Parks*, 567 S.W.2d at 469). Further, we concluded that "while [renters] may well eat, sleep, relax, and bathe while there, they do not reside there. Instead . . . renters use the property in the same way that people use a motel." *Id*.

Almost identically, the 1984 Declaration at issue here restricts Plaintiff's use of the Property, his lot and cabin, to residential uses. This is evident from the provision that states: "each Lot shall be used for residential and no other purposes." In our view, the phrase "no other purposes" is no different from "exclusively," as both clearly indicate an intent to prohibit any non-residential use. As the trial court correctly found, while the 1984 Declaration does not expressly prohibit short-term rentals, it expressly prohibits any short-term rental that is not *residential* in nature. *See Teffeteller*, 2006 WL 408050, at *4. Thus, the relevant inquiry is whether Plaintiff's renters are using the Property on a short-term residential basis or as a short-term vacation rental. *See id.*

Like *Teffeteller*, and as the trial court noted, the nature of Plaintiff's use of the Property is not residential. Though Plaintiff argues that this case is distinguishable from *Teffeteller* because renters are not using the Property "like a motel," there is no meaningful difference between how renters in *Teffeteller* used that property and how Plaintiff's renters use his property. The undisputed facts establish that immediately after purchasing his lot in 2015, Plaintiff engaged Center Hill Chalets, a property management company that leases the Property as a short-term vacation rental for those visiting the area. It is also undisputed that Center Hill Chalets advertises Plaintiff's lot on as many as 25 different short-term vacation rental websites, requiring a minimum of a two-night stay and a maximum of 28 nights. To facilitate each rental, the management company provides key code access to short-term renters to access Plaintiff's cabin as well as laundry and cleaning services. It also provides concierge services for the renters. After each rental, the management company resets the cabin in preparation for the next renter. When considered in concert, these facts clearly show that Plaintiff's renters are using the Property for "the most temporary convenience of shelter in the course of a brief stay in the area." *Id*. at *4 (quoting *Parks*, 567 S.W.2d at 469). Thus, based on the undisputed facts, we find no meaningful difference between Plaintiff's renters and those in *Teffeteller*.[7]

For completeness, it is significant to note that Plaintiff admitted his non-residential use of the Property was not incidental.[8] This is significant because we have recognized the importance of intent in deciding whether a similar restrictive covenant prohibiting commercial use had been violated. In doing so, the court determined that there was a relevant distinction between the principal use of a property for non-residential purposes

---

[7] We acknowledge Plaintiff's contention that he is not operating his rental business "like a motel," as discussed in *Teffeteller*, because he is only renting one unit, his lot and cabin, not several units. Based on this fact, he seeks to distinguish his business activities from those in *Teffeteller*. We, however, find this distinction inconsequential because Plaintiff is, in fact, engaged in the business of renting the Property, his cabin and lot, to third parties as a short-term vacation rental. Thus, he is not using the Property for residential purposes.

[8] Plaintiff stipulated, for purposes of summary judgment, that "the rental use of [his] property is not merely incidental but, instead, the property is being rented as a business venture." The trial court found that the short-term rental business was prohibited by the restrictions in the 1984 Declaration.

and "the incidental use of a dwelling for purposes . . . from which the owner derives some income or profit but which may not . . . be termed a business or trade." *Carr v. Trivett*, 143 S.W.2d 900, 903 (Tenn. Ct. App. 1940) (citation omitted). Here, Plaintiff's only use of the Property is for a business purpose, for short-term vacation rentals to third parties. Thus, Plaintiff's use of the Property as a vacation rental is not incidental. As a consequence, his non-residential use of the Property is in violation of the restrictive covenants set forth in the 1984 Declaration.

For the reasons stated above, the trial court correctly found that the 1984 Declaration precludes Plaintiff from leasing the Property as a non-residential vacation rental and, based on the material facts, which are undisputed, FSD was entitled to summary judgment as a matter of law based on the restrictive covenants in the 1984 Declaration.

## II. THE 2018 AMENDMENT

The 1984 Declaration established that its covenants and restrictions could be amended, and Section 2 of Article XIII of the 1984 Declaration specified the means by which Four Seasons property owners, also referred to as FSD "Stockholders," could enact amendments. Article I, Section 15 and Article III, Section 1 of the 1984 Declaration defined "Stockholders" as those record owners of lots subject to the Declaration who were issued one share of stock in FSD for each lot owned. Section 2 of Article XIII of the 1984 Declaration also provided that any amendment shall be effective when recorded in the Register's Office for DeKalb County.

During and prior to 2018, the stockholders discussed amending the 1984 Declaration to relax the residential use restriction.[9] It is undisputed that a majority of the stockholders ultimately approved the 2018 Amendment, as is authorized by Section 2 of Article XIII of the 1984 Declaration. Moreover, it is undisputed that the 2018 Amendment was duly recorded with the DeKalb County Register of Deeds on July 24, 2018. Thus, the 2018 Amendment became effective on that day.

In pertinent part, the 2018 Amendment states:

Leasing homes owned by FSDC shareholders shall be allowed with the following stipulations:

i. **The length of the lease must be for a minimum of 30 consecutive days**.

---

[9] For purposes of summary judgment, Plaintiff stipulated that he knew the 1984 Declaration could be amended by the stockholders when he purchased the Property in 2015. Moreover, a representative of Plaintiff attended the 2018 meetings during which the proposed 2018 Amendment was discussed and ultimately approved.

ii. At least 10 days in advance of the beginning date for the lease, the owner must provide the full legal name(s), date(s) of birth, driver's license number(s), and $25.00 to Four Seasons Development Corporation for the purpose of FSDC[] conducting a background check(s) of the lessee(s).

iii. At or before the commencement of the lease period, the owner shall require the lessee(s) to sign a document that the lessee(s) has read and agrees to comply with all FSDC covenants, conditions, and restrictions, all bylaws as well as all rules and regulations of FSDC

.   .   .

vii. Leasing agencies may arrange leases between an owner and his lessee under the above provisions as long as all FSDC rules, regulations and other governing documents are followed. In all cases, subletting of the property(ies) is strictly prohibited.

.   .   .

ix. **Any owner engaged in leasing or subleasing activities as of the date of this amendment shall be allowed to continue leasing or subleasing activities until the expiration of the term of said lease or said lot is sold or conveyed to a third party**. No lease or sublease term extensions are permitted. In order to ascertain the expiration date of current leases, any owner who is leasing as of the date of this Third Amendment shall provide a copy of the lease to the FSDC Board's secretary within two weeks of the date this Third Amendment is filed with the DeKalb County Register of Deeds' office.

x. Owners shall remain responsible for all activities of their lessees.

(Emphasis added).

Acting on FSD's motion for summary judgment, the trial court determined that "the 2018 Amendment to the Declaration of Covenants, Conditions and Restrictions bars [Plaintiff] from short term leasing his property for less than thirty (30) days" and that Plaintiff was in violation of the 2018 Amendment "by short term renting/leasing his property for less than thirty days at a time."

Plaintiff challenges this ruling on three principal fronts. First, he contends the 1984 Declaration and the 2018 Amendment are unenforceable because the time-limited

covenants in the 1967 and 1974 covenants had expired. Second, he contends the 2018 Amendment is unenforceable because Tennessee courts abhor the retroactive application of substantive restrictions on real property. Finally, he contends he is exempt from the thirty-day minimum leasing restriction based on a grandfathering provision in subsection (ix.) of the 2018 Amendment. We will discuss each argument in turn.

Plaintiff contends that our Supreme Court's recent decision in *Phillips v. Hatfield*, 624 S.W.3d 464 (Tenn. 2021) "breathed new life into the issue of time-limited covenants, such as the 1967 and 1974 covenants at issue here." We find Plaintiff's reliance on *Phillips* in the context of this issue misplaced because the material facts in this case are readily distinguishable from those in *Phillips*.

The issue in *Phillips* was whether restrictive covenants that were executed and recorded by the developers of a subdivision *after* the developers sold the lots at issue applied to the defendant's property. *Id.* at 468. The relevant facts as summarized in the Court in *Phillips* are as follows:

> The developers platted a subdivision and sold the vast majority of lots with time-limited restrictions against non-residential use expressly stated in the deeds that conveyed the lots. *Thereafter*, the developers recorded a declaration of more fulsome, non-time-limited restrictive covenants— including a restriction against non-residential use—that purported to apply to all lots in the subdivision. Decades later, well after the expiration of the time-limited deed restrictions, the Defendant purchased lots and proposed to build a structure for the operation of a retail business. The Plaintiffs, who reside in a home on lots adjacent to the Defendant's property, brought a declaratory judgment action to enforce the non-time-limited restriction against non-residential use contained in the recorded declaration.

*Id.* (emphasis added). The Court held "that the developers lacked the authority to impose the declaration's restrictions upon the Defendant's property because they did not own those lots when they executed and recorded the declaration." *Id.*

By contrast, the restrictive conditions that give rise to the present dispute were duly recorded in 1984 after having been approved by the current owner of Four Seasons, FSD. Moreover, the 1984 Declaration expressly provided that those restrictions would not expire unless terminated by a majority vote of the FSD stockholders, an event that has not occurred. Thus, the material facts in this case are readily distinguishable from those in *Phillips*.

As for his second issue, Plaintiff relies on *Phillips* to note that Tennessee law "abhors" retroactive application of substantive restrictions on real property. FSD counters this argument by noting that it is not attempting to apply the 2018 Amendment

retrospectively. On the contrary, FSD insists that the amendment is being applied prospectively, and the undisputed facts established that Plaintiff has continuously been in violation of the 2018 Amendment since it went into effect. FSD also relies on the fact that the 1984 Declaration established a contract between the corporation and the owners of lots within Four Seasons. In this regard, FSD notes that the 1984 Declaration authorized the stockholders of FSD to amend the 1984 Declaration and provided that any such amendment would be binding on the existing stockholders and their lots. In making these arguments, FSD principally relies on this court's ruling in *The Preserve at Forrest Crossing Townhome Ass'n, Inc. v. DeVaughn*, No. M2011-02755-COA-R3-CV, 2013 WL 396000 (Tenn. Ct. App. Jan. 30, 2013).

FSD contends the 2018 Amendment is valid and enforceable for three reasons, two of which we address below. First, FSD relies on the undisputed fact that Plaintiff had notice when he purchased his lot that the Property was subject to restrictive covenants that could be amended by a majority vote of the stockholders. Second, Plaintiff is bound by the contractual provisions in the 1984 Declaration, which includes collective decision making by the stockholders of FSD, also known as community association governance. *See Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 476 (Tenn. 2012).

As our Supreme Court noted in *Hughes v. New Life Development Corp.*, when courts interpret restrictive covenants pursuant to contract principles, we are careful to avoid "disregarding contractual provisions simply because a party later finds the contract to be unwise or unsatisfactory." 387 S.W.3d at 476 (citations omitted). The Court reasoned:

> These contract principles, applied in the context of a private residential development with covenants that are expressly subject to amendment without substantive limitation, yield the conclusion that a homeowner should not be heard to complain when, as anticipated by the recorded declaration of covenants, the homeowners' association amends the declaration. When a purchaser buys into such a community, the purchaser buys not only subject to the express covenants in the declaration, but also subject to the amendment provisions of the declaration. And, of course, a potential homeowner concerned about community association governance has the option to purchase a home not subject to association governance. *As one commentator has noted, people who live in private developments "are not just opting for private ordering in the form of covenants, but also are opting for a privatized form of collective decision making that can undo, replace, modify, or augment the private ordering already achieved*."

*Id.* (emphasis added) (citations omitted) (quoting Lee Anne Fennell, *Contracting Communities*, 2004 U. Ill. L.Rev. 829, 848 (2004)).

For these reasons, as stated by FSD in its brief, "holding that no valid, amended restrictive covenants can be placed on a landowner's property after the owner obtained the property would impermissibly require courts to interfere in the contracts and 'affairs of a majoritarian association that parties freely choose to enter.'" (Quoting *Hughes*, 387 S.W.3d at 476).

As FSD correctly contends, and as this court has reasoned: "[n]otwithstanding the State's preference for the freedom of private owners to use their land as they see fit, the courts will uphold covenants running with the land where the intent of the parties to bind their remote successors can be determined by the language of the covenant and the circumstances of its making." *Hillis v. Powers*, 875 S.W.2d 273, 275 (Tenn. Ct. App. 1993) (citing *Ridley v. Haiman*, 47 S.W.2d 750 (Tenn. 1932); *Land Developers, Inc. v. Maxwell*, 537 S.W.2d 904 (Tenn. 1976); *Stracener v. Bailey*, 737 S.W.2d 536 (Tenn. Ct. App. 1986)).

Plaintiff purchased the Property subject to, and with notice of, the 1984 Declaration, which provided a mechanism by which FSD's stockholders could enact amendments. The 1984 Declaration specifically provides that any such amendment will be binding on the existing stockholders and their lots. The 2018 Amendment was approved by a majority of the stockholders, and it was duly recorded with the Register of Deeds shortly thereafter. Accordingly, the Property, as well as Plaintiff's use of the Property, is subject to the 2018 Amendment.

Nevertheless, we recognize that the right of an association to amend its restrictive covenants is not without limitations, and its subsequent decisions are not immune from judicial review. *See Hughes*, 387 S.W.3d at 476 ("We acknowledge that a homeowner's Lockean exchange of personal rights for the advantages afforded by private residential communities does not operate to wholly preclude judicial review of the majority's decision."). However, "because of the respect Tennessee law affords private contracting parties, we are reticent to inject the courts too deeply into the affairs of a majoritarian association that parties freely choose to enter." *Id.* After considering the standards of review adopted by several other jurisdictions and having rejected the "reasonableness standard," our Supreme Court has concluded that amendments to a restrictive covenant declaration, once duly adopted by the members or stockholders, "are subject to judicial review principally under an arbitrary and capricious standard." *Id.* at 478. Accordingly, we must examine the 2018 Amendment for any indication that its provisions are "arbitrary or capricious." *See id.*

As *Hughes* instructs, "the arbitrary and capricious standard requires the reviewing court to determine whether there has been a clear error in judgment." *Id.* at 479 (citing *Jackson Mobilphone Co. v. Tennessee Pub. Serv. Comm'n*, 876 S.W.2d 106, 110–11 (Tenn. Ct. App. 1993)). "An arbitrary or capricious decision is one that is not based on any course of reasoning or exercise of judgment, or one that disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same

conclusion." *Id.* at 479–80 (citing *Miller v. Civ. Serv. Comm'n of Metro. Gov't of Nashville & Davidson Cnty.*, 271 S.W.3d 659, 665 (Tenn. Ct. App. 2008)).

Here, the provisions in the 2018 Amendment are uniform and apply to all lots and owners within Four Seasons. Further, and contrary to Plaintiff's contentions, there is no retrospective application of any provision in the 2018 Amendment. As a consequence, the 2018 Amendment may not be used to sanction or otherwise punish Plaintiff for his use of the Property prior to the 2018 Amendment going into effect on July 23, 2018. Based on the foregoing and other circumstances in the record, we find no basis on which to conclude that the enactment of the 2018 Amendment was arbitrary or capricious.

Lastly, we acknowledge Plaintiff's alternative argument that he is exempt from the new restriction that "the length of the lease must be for a minimum of 30 consecutive days," based on a grandfathering provision in subsection (ix.) in the 2018 Amendment and the undisputed fact that Plaintiff has not sold the Property. The provision Plaintiff relies on reads in pertinent part:

> xi. **Any owner engaged in leasing or subleasing activities as of the date of this amendment shall be allowed to continue leasing or subleasing activities until the expiration of the term of said lease or said lot is sold or conveyed to a third party**. No lease or sublease term extensions are permitted. In order to ascertain the expiration date of current leases, any owner who is leasing as of the date of this Third Amendment shall provide a copy of the lease to the FSDC Board's secretary within two weeks of the date this Third Amendment is filed with the DeKalb County Register of Deeds' office.

We find Plaintiff's reliance on this provision misplaced, as did the trial court. In ruling on this issue, the trial court stated, "[T]he way I read it is it's disjunctive rather than conjunctive . . . so the way I look at it is apparently the leases end because it's a short-term lease. So, it doesn't say you can start a new lease; it just says the lease ends."

FSD provides a thorough and well-reasoned analysis of this issue in its brief, an analysis we find persuasive, and for this reason we quote much of its argument below:

> When considering this grandfathering language, a reviewing court must interpret it in the context of the amendment as a whole. The 2018 Amendment begins, with a broad authorization that "[l]easing homes by FSDC shareholders *shall be allowed with the following stipulations*." In the context of the entire amendment, therefore, the remaining paragraphs act as requirements which, if met, allow Four Seasons properties to be leased.

Drilling down further, the context of the grandfathering provision must also be considered as a whole to interpret the parties['] intent with the use of the conjunction "or" within it. First, paragraph (ix) includes a time restriction after which a stockholder may be grandfathered in: "Any owner engaged in leasing or subleasing activities *as of the date of this amendment . . .*" The protection under this section only attaches to those owners engaged in leasing activities as of July 24, 2018.

Second, the phrase attached to the conjunction "until the expiration of the term of *said* lease" when considered in connection with the terms "leasing or subleasing activities" in the introductory sentence of paragraph (ix) logically requires that an identifiable lease must be in effect as of the date of the amendment rather than a more generalized practice of leasing. Otherwise, the modifier "*said*" in "*said lease*" would not be given its ordinary and usual meaning of "aforesaid" or "above-mentioned" to refer to the owner engaged in leasing when the amendment was passed.

Third, the amendment requires any owners under a current lease as of the date of the amendment to provide a copy to the Board so that the Board can determine the expiration date for any such current leases. This requirement would be rendered superfluous if the current owners could simply continue to engage in new and different leases until they sold or conveyed their property.

In the context of the 2018 Amendment as a whole, it is clear that the use of "or" in grandfathering provision can only reasonably be interpreted in the disjunctive. The two separate and independent clauses, "*until the expiration of the term of said lease*" and "*said lot is sold or conveyed to a third party*" are connected in paragraph (ix) by the disjunctive "or" which serves to create two triggering events, either of which would serve to extinguish the owner's authority to lease property unless or until the remaining requirements of the amendment are met. To replace "or" with "and" as Appellant argues would require that this Court ignore the ordinary and natural meaning of the terms and the context of the amendment as a whole. This strained construction of the language to create an ambiguity where one does not exist is impermissible under Tennessee law.

(Citations omitted).

Having construed the meaning of subsection (ix.), we agree with FSD's conclusion that subsection (ix.) has two triggering events. First, the expiration of the lease, "said lease," in effect when the 2018 Amendment went into effect on July 24, 2018. Second, when the current owner of a lot sells or conveys his or her lot to another. Thus, the

occurrence of either of these triggering events extinguishes the lot owner's authority to lease his or her property except as provided under the 2018 Amendment, including the provision that the length of future lease "must be for a minimum of 30 consecutive days."

Because it is undisputed that Plaintiff rented his property for periods of no more than 28 days, Plaintiff's last lease would have expired, at the latest, within 28 days of the 2018 Amendment going into effect. Moreover, Plaintiff's reliance on the fact that he has not sold the Property is unavailing. Accordingly, Plaintiff is bound by the provision in the 2018 Amendment requiring that "the length of the lease must be for a minimum of 30 consecutive days."

For the foregoing reasons, we affirm the trial court's determination that "the 2018 Amendment to the Declaration of Covenants, Conditions and Restrictions bars [Plaintiff] from short term leasing his property for less than thirty (30) days."

**IN CONCLUSION**

The judgment of the trial court is affirmed in all respects, and this matter is remanded with costs of appeal assessed against Dr. Pratik Pandharipande.

_____
FRANK G. CLEMENT JR., P.J., M.S.